## DIRECTOR GENERAL OF RAILROADS v. KASTENBAUM.

### CERTIORARI TO THE SUPREME COURT OF THE STATE OF NEW YORK.

No. 39. Argued October 3, 4, 1923.—Decided November 12, 1923.

Under § 10 of the Federal Control Act, an action for false imprisonment may be maintained against the Director General of Railroads by a person, who, at the instigation of railroad detectives, (agents of the Director General,) acting without probable cause, was arrested without warrant for a theft of freight from the railroad while under federal control. P. 27.

198 App. Div. 966; 199 id. 957, affirmed.

CERTIORARI to the Supreme Court of New York to review a judgment for damages recovered by the respondent from the petitioner in an action for false imprisonment. The judgment was affirmed by the Appellate Division and leave to appeal to the Court of Appeals was denied.

Mr. *Thomas R. Wheeler,* with whom Mr. *Lyman M. Bass* was on the brief, for petitioner.

Mr. *Israel G. Holender* for respondent.

MR. CHIEF JUSTICE TAFT delivered the opinion of the Court.

Respondent brought an action in the Supreme Court of Erie County, New York, against the Director General of Railroads, seeking damages for false imprisonment and malicious prosecution. The trial court, at the close of the plaintiff's case, dismissed the cause of action for malicious prosecution, but allowed the trial to proceed to verdict and judgment for $500 for false imprisonment. The judgment was affirmed by the Appellate Division of the Supreme Court and a motion for leave to appeal was denied by the Court of Appeals of the State.

The brief for petitioner on the merits states the single question to be:

Does an action for false arrest lie against the petitioner, an officer of the United States Government, under the provisions of § 10 of the Act of Congress of March 21, 1918, c. 25, 40 Stat. 451, providing for federal control of carriers?

Twenty-one tubs of butter were taken from a freight car of the Lehigh Valley Railroad in Buffalo. A trolley car of that city, late at night, collided with a horse and wagon and, in the wreck which followed, the stolen tubs of butter were discovered. Two men who had been driving the wagon escaped. The detective force of the railway company sought to discover the owner of the horse and thought they had traced the ownership to Kastenbaum, who was a huckster. The railroad detective notified the police authorities of the city, who detailed two policemen to accompany him to Kastenbaum's house, where they arrested him without warrant. They took him to a police station and kept him there over night and until he was released the next day on bail. He was brought to a hearing before an examining magistrate on a charge of grand larceny and burglary. After four or five adjournments, at the instance of the prosecution, the magistrate discharged Kastenbaum. His horse proved to be one of another color. Under the charge of the court

the jury were permitted to return only compensatory damages.

Section 10 of the Federal Control Act provides:

" That carriers while under Federal control shall be subject to all laws and liabilities as common carriers, whether arising under State or Federal laws or at common law, except in so far as may be inconsistent with the provisions of this Act or any other act applicable to such Federal control or with any order of the President. Actions at law or suits in equity may be brought by and against such carriers and judgments rendered as now provided by law; and in any action at law or suit in equity against the carrier, no defense shall be made thereto upon the ground that the carrier is an instrumentality or agency of the Federal Government."

By General Order No. 50, the Executive so limited suits to be brought against carriers for injuries to person or property under the section as to exclude those for recovery of fines, penalties and forfeitures.

As we said in *Missouri Pacific R. R. Co.* v. *Ault,* 256 U. S. 554, 563:

" The Government undertook as carrier to observe all existing laws; it undertook to compensate any person injured through a departure by its agents or servants from their duty under such law; but it did not undertake to punish itself for any departure by the imposition upon itself of fines and penalties or to permit any other sovereignty to punish it."

The action for false imprisonment is in the nature of a trespass for a wrong or illegal act in which the defendant must have personally participated directly or by indirect procurement. The gist of it is an unlawful detention, and that being shown the burden is on the defendant to establish probable cause for the arrest. The want of probable cause, certainly in the absence of proof of guilt or conviction of the plaintiff, is measured by the state of

the defendant's knowledge, not by his intent. It means the absence of probable cause known to the defendant when he instituted the suit. But the standard appl'ed to defendant's consciousness is external to it. The question is not whether he thought the facts to constitute probable cause, but whether the court thinks they did. Holmes on the Common Law, 140. Probable cause is a mixed question of law and fact. The court submits the evidence of it to the jury, with instructions as to what facts will amount to probable cause if proved. *Stewart v. Sonneborn*, 98 U. S. 187, 194; Pollock on Torts, 8th ed., p. 225; Cooley on Torts, 3d ed., Vol. 1, p. 321. Counsel for petitioner contends that, in an action against the sovereign government, it must be conclusively presumed that good faith existed upon its part so far as it is responsible for the arrest, and therefore that a complete defense of probable cause on its part is always made out. But, as we have seen, good faith is not enough to constitute probable cause. That faith must be grounded on facts within knowledge of the Director General's agent, which in the judgment of the court would make his faith reasonable.

The Government under § 10, in a case of false imprisonment, stands exactly as if it were a railway corporation operating as a common carrier. Such a corporation would clearly be responsible for an arrest of the kind here shown, if without probable cause and made by one of its detectives employed to protect the property entrusted to its care as a common carrier. It is within the scope of the agency of such an employee to discover the perpetrators of crime against the property in order to recover it and to procure the arrest of supposed offenders and their prosecution and conviction in order to deter others from further depredations. If, in the field of such employment, the agent acts without probable cause and an illegal arrest without judicial warrant is made, the corporation

is liable as for any other act of its agents within the scope of their employment in carrying on the business of a common carrier. *Philadelphia, Wilmington & Baltimore R. R. Co.* v. *Quigley,* 21 How. 202, 210; *Genga* v. *Director General of Railroads,* 243 Mass. 101.

We have not before us the question whether the Director General might be held for exemplary damages in a case like this, under the restrictions of Order No. 50, as construed in the *Ault Case,* because, as already said, the court limited the recovery to compensatory damages.

*Affirmed.*