**RIGGS NATIONAL BANK and Michael Finnegan, Appellants,**

v.

**Barbara PRICE, Appellee.**

**No. 9669.**

District of Columbia Court of Appeals.

Argued Feb. 3, 1976.

Decided June 16, 1976.

John F. Mahoney, Jr., Washington, D. C., for appellants.

Edward J. Mullaney, Washington, D. C., with whom Paul D. Murphy, Washington, D. C., was on the brief, for appellee.

Before KELLY and FICKLING, Associate Judges, and HOOD, Chief Judge, Retired.

PER CURIAM:

Appellee Price sued appellant Riggs National Bank and appellant Finnegan, the bank's employee, for false imprisonment and for slander. A jury found in her favor on both counts. For false imprisonment she was awarded $2,000 compensatory damages against both defendants, plus $5,000 punitive damages against the bank and $500 punitive damages against the employee. For the slander the jury awarded $2,500 compensatory damages against both defendants and an additional $5,000 puni- tive damages against the bank and $500 punitive damages against the employee.

Appellants do not contend here the propriety of the submission of the slander count to the jury or the award of compensatory damages thereon. But appellants do contend that the evidence was insufficient to submit the issue of false imprisonment to the jury and was insufficient to support an award of punitive damages under either count.

Appellee's testimony, essentially, was that a friend had purchased at a neighborhood liquor store a Federal Express Money Order for $15.00 payable through a Maryland bank and had asked her to take it to pay his telephone bill.[1] Upon her assent he signed the order and she put her name and address on it. He told her he had previously paid his telephone bills at the Riggs branch on Columbia Road but she went to the Riggs branch on Park Road because it was only two blocks from her home.

When appellee arrived at the bank shortly after one o'clock, she waited in line to reach a teller's window. She presented the telephone bill and money order and was told by the teller she would have to have the money order approved by the assistant manager, appellant Finnegan, whose desk was in the lobby behind a low divider. A number of people were waiting to see him and she took her place in line. When her turn was reached, she handed the manager the money order, stating she had no account at the bank but wished to pay the telephone bill, adding her sister did have an account there. He took the money order, looked at it and said: "Young lady, I think you better have a seat and talk to the police because this money order is stolen." He pulled out a notebook and took from it some money orders of the same type, and he told appellee "you'll have to talk to the police because its stolen." He then made three telephone

---

1. The telephone bill was slightly over $15.00 and appellee was to advance the difference.

calls. A number of people were close enough to hear his remarks to her.

Appellee did not hear the manager's telephone conversations but did hear him say he was trying to check some serial numbers. When he had finished his third call, appellee said to him: "listen, this money order better be stolen, after all, it's embarrassing." He then handed her the money order, saying the bank would not accept it, and she left. She had been at the desk 15 or 20 minutes. She went to the liquor store where the money order had been purchased and was assured that her friend had purchased it and it had not been stolen.

Appellee admitted that the manager did not accuse her of stealing the money order or of knowing that it had been stolen; that the manager did not tell her he was going to call the police, and did not tell her she could not leave until he had made his telephone calls. She testified she did not attempt to leave because she saw a bank guard in the lobby and two police officers outside the bank, and was afraid if she got up to leave some one would say stop. In her words, she felt "mentally restrained."

Appellants' version of the incident was that the bank had accepted for cash or deposit a number of Federal Express Money Orders which it later learned had been stolen and the money order presented by appellee resembled those orders; that the manager told appellee that the money order possibly had been stolen and asked her to be seated while he checked it out; that he called the Maryland bank through which the order was payable and also the National Money Order Company, but could not get the desired information; that he then told appellee he didn't know whether or not the order had been stolen and he could not approve it, but if she wished to bring it back on the following Monday he hoped

to have the necessary information by that time. She took the order, left and never returned.

■ The gist of the action for false imprisonment is an unlawful detention. *Clarke v. District of Columbia,* D.C.App., 311 A.2d 508 (1973), *citing Director General of Railroads v. Kastenbaum,* 263 U.S. 25, 44 S.Ct. 52, 68 L.Ed. 146 (1923). Such detention "may be caused by actual force, or by fear of force, or even by words." *Tocker v. Great Atlantic & Pacific Tea Co.,* D.C.App., 190 A.2d 822, 824 (1963). Appellee concedes she was not physically restrained, she was not told she should not leave, no threats were made against her leaving, she made no attempt to leave, and she made no request for permission to leave.

■■ Our question is whether there was evidence from which a jury could find that appellee's fear she would be stopped if she attempted to leave was a reasonable fear of such magnitude as to prevent her freedom of movement. Appellee was an educated adult, 22 years of age and a recent university graduate. The occurrence took place not in a private closed room but in the open bank lobby filled with customers. Nothing in the record indicates that the bank guard in the lobby or the police outside were even aware of appellee's presence. We find nothing in the record that would justify a jury in finding that appellee was unlawfully detained by the actions or words of the bank manager. When appellee, a noncustomer, asked the bank to accept a money order payable through an out-of-state institution, the bank had the right to examine the instrument and assure itself of its validity and, if doubts arose, to refuse to accept it. That, it apears from the evidence here, is what happened. That judgment for false imprisonment cannot stand.[2]

2. For cases supporting our position though dealing with entirely different sets of circumstances, *see Grayson Variety Store v. Shaffer,* 402 S.W.2d 424 (Ky.1967); *Bruce v. Meijers Supermarkets, Inc.,* 34 Mich.App. 352, 191 N.W.2d 132 (1971); *Martin v. Santora,* 199 So.2d 63 (Miss.1967). *Mullins v. Rinks,* 27 Ohio App.2d 45, 272 N.E.2d 152 (1971).

■ The remaining question is whether the evidence permitted an award of punitive damages on the slander count. Such damages are awarded to punish a person for outrageous conduct such as maliciousness, wantonness, gross fraud, recklessness and willful disregard of another's rights. *Franklin Investment Co. v. Homburg*, D.C. App., 252 A.2d 95 (1969). *Washington Garage Co. v. Klare*, D.C.App., 248 A.2d 681 (1968). However, it has been said that such damages are not favored. *Brown v. Coates*, 102 U.S.App.D.C. 300, 253 F.2d 36 (1958).[3]

■ We see nothing in the record which would justify a finding that the manager's conduct was outrageous. Though he stated that the money order tendered by appellee had been stolen,[4] he did not charge her with having stolen it or even knowing it had been stolen. He did not threaten her or verbally abuse her. Nothing he said or did indicated an ill will toward her. After expressing his opinion that the instrument had been stolen, he attempted to verify his belief. Failing in that he returned the money order to her. There was simply no evidence from which the jury could reasonably find that the manager's statement to appellee was maliciously or recklessly made in willful disregard of appellee's rights.[5]

The judgment on the slander count for $2,500 compensatory damages is affirmed. In all other respects the judgment is reversed.

*So ordered.*

---

3. Punitive damages have been recently defined as "private fines levied by civil juries to punish reprehensible conduct and to deter its future occurrence." *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 350, 94 S.Ct. 2997, 3012, 41 L.Ed.2d 789 (1974).

4. The unexplained or unsatisfactorily explained possession of recently stolen property permits an inference that the possessor is the person who stole it. *White v. United States*, D.C.App., 300 A.2d 716 (1973).

---

5. It is not necessary for us to decide whether the holding in *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 349, 94 S.Ct. 2997, 3011, 41 L.Ed.2d 789 (1974) limiting recovery of punitive damages in libel and slander actions to those where there is a showing of "knowledge of falsity and reckless disregard for the truth," is applicable here. *See Jacron Sales Co. v. Sindorf*, 276 Md. 580, 350 A.2d 688 (1976); *General Motors Corp. v. Piskor*, 277 Md. 165, 352 A.2d 810 (1976).