HERBST, and others, Plaintiffs-Respondents, v. WUEN-NENBERG, Defendant-Appellant.

*No. 75–841. Argued April 3, 1978.—Decided June 6, 1978.*
(Also reported in 266 N. W. 2d 391.)

For the appellant there was a brief and oral argument by *Stephen B. Schneider* of Madison.

For the respondents there was a brief by *Michael E. Ehrsam,* and *Bell, Metzner & Siebold, S. C.,* and oral argument by *Mr. Ehrsam,* all of Madison.

ABRAHAMSON, J.  Carol Wuennenberg appeals from a judgment entered by the trial court on a jury's special verdict finding that she falsely imprisoned Jason A. Herbst, Ronald B. Nadel, and Robert A. Ritholz ("plaintiffs").  Because there is no credible evidence to sustain a finding of false imprisonment, we reverse the judgment and order the cause remanded so that plain-

tiffs' complaint can be dismissed and judgment entered in favor of Wuennenberg.

## I.

In April 1975, plaintiffs initiated a civil action charging Wuennenberg with false imprisonment, malicious prosecution, and abuse of process. Plaintiffs' cause of action for false imprisonment arose from an incident which took place on September 19, 1974 in the vestibule of a three-unit apartment building owned and lived in by Wuennenberg and located within the district which Wuennenberg represented as alderperson in the city of Madison. Plaintiffs' causes of action for malicious prosecution and abuse of process arose from trespass actions brought against the plaintiffs by the city of Madison after Wuennenberg had registered a complaint about the September 19, 1974 incident.

On September 19, 1974, the plaintiffs were comparing the voter registration list for the City of Madison with names on the mailboxes in multi-unit residential dwellings in Wuennenberg's aldermanic district. Plaintiffs' ultimate purpose was to "purge the voter lists" by challenging the registrations of people whose names were not on mailboxes at the addresses from which they were registered to vote.

The plaintiffs and Wuennenberg gave somewhat differing accounts of the incident which gave rise to the action for false imprisonment, but the dispositive facts are not in dispute.

According to Ritholz, whose version of the incident was corroborated by Herbst and Nadel, when the plaintiffs reached Wuennenberg's house at approximately 4:30 p.m. they entered unannounced through the outer door into a vestibule area which lies between the inner and outer doors to Wuennenberg's building. The plain-

tiffs stood in the vestibule near the mailboxes, which were on a wall in the vestibule approximately two feet inside the front door to the building. Neither he nor the other plaintiffs touched the mailboxes, stated Ritholz; he simply read the names listed for Wuennenberg's address from a computer printout of the registered voters in Wuennenberg's district, and the others checked to see if those names appeared on the mailboxes.

When they were half way through checking, testified Ritholz, Wuennenberg entered the vestibule from an inner door and asked plaintiffs what they were doing. Ritholz replied that they were working for the Republican party, purging voter lists. According to Ritholz, Wuennenberg became very agitated and told the plaintiffs that she did not want them in her district. "At first she told us to leave," testified Ritholz, "and we agreed to leave, but she very quickly changed her mind and wanted to know who we were. Since we already agreed to leave, we didn't think this was necessary."

After the plaintiffs had refused to identify themselves to her, Wuennenberg asked them whether they would be willing to identify themselves to the police. Ritholz replied that they would be willing to do so. Nonetheless, testified Ritholz, he would have preferred to leave, and several times he offered to leave. Both Nadel and Herbst, who agreed that Ritholz was acting as spokesman for the group, testified to Ritholz's statement to Wuennenberg that the plaintiffs were willing to identify themselves to the police.

Subsequently, Wuennenberg's husband came to the vestibule to see what was going on, and Wuennenberg asked him to call the police. About this time Wuennenberg moved from the inner door to a position in front of the outer door. According to Nadel, Wuennenberg blocked the outer door by "standing there with her arms on the pillars to the door to block our exit." The plaintiffs

agreed that Wuennenberg had not threatened or intimidated them and that they neither asked her permission to leave nor made any attempt to get her to move away from the doorway. When asked why he had not attempted to leave the vestibule, each of the plaintiffs answered, in effect, that he assumed he would have had to push Wuennenberg out of the way in order to do so.

The plaintiffs waited in the vestibule, stated Ritholz, until the police came some five minutes later. They gave their names and explained their errand to a police officer who told them that they were not doing anything wrong and that they could continue checking the mailboxes in the district.

Wuennenberg testified that she and her husband were in their livingroom watching television and reading the paper when she heard the plaintiffs enter her vestibule. She came to the inner door, noted Herbst with his hands on the mailboxes, and asked the plaintiffs if she could be of any assistance to them. Ritholz answered "No." She next asked if they were looking for someone in the building. Ritholz again answered "No." Wuennenberg then asked what the plaintiffs were doing in the vestibule, and Ritholz replied "We're purging the voters." According to Wuennenberg, Ritholz first stated that he and his companions were "purging the voters" for the City Clerk. When she replied that the City Clerk had not been authorized to hire people for this purpose, Ritholz then stated that the plaintiffs were election officials, volunteering their services. At this point, stated Wuennenberg, she told the plaintiffs that it did not seem proper for citizen volunteers to be interfering with mailboxes and that she considered the plaintiffs to be trespassing on her property. Ritholz, speaking in "an authoritative tone," replied that the vestibule to Wuennenberg's building was "just like a public street" and that he had a right to be there.

After Ritholz told Wuennenberg that the plaintiffs would not identify themselves to her, but that they would identify themselves to the police, Wuennenberg's husband came out to see what was happening. She explained and then told him, "It looks like you'll have to call the police." Her husband looked at the plaintiffs, and they "nodded their approval to this."

After her husband left to call the police, testified Wuennenberg, she positioned herself in front of the outer doorway because she could watch for the arrival of the police from that vantage and because "I didn't want someone trying to run away at that point." She stated she did not brace her arms against the door frame. She would not have made any effort to stop the plaintiffs had they attempted to leave, stated Wuennenberg, because "I'm not physically capable of stopping anybody."

Plaintiffs' causes of action for false imprisonment, abuse of process, and malicious prosecution were tried before a jury. At the close of the evidence, the trial court granted Wuennenberg's motion for a directed verdict on the causes of action for malicious prosecution and abuse of process but denied Wuennenberg's motion for a directed verdict on the cause of action for false imprisonment.

The jury returned a special verdict finding that Wuennenberg had falsely imprisoned the plaintiffs and awarded Herbst, Nadel and Ritholz a total of $1,500 in actual damages. The jury found that Wuennenberg's acts had not been malicious and thus declined to award punitive damages.

## II.

We reiterate the rule which this court must follow in reviewing the record to determine if the jury verdict is

supported by the evidence: A jury verdict will not be upset if there is any credible evidence which under any reasonable view fairly admits of an inference supporting the findings. The evidence is to be viewed in the light most favorable to the verdict. A jury cannot base its findings on conjecture and speculation.[1] We hold that the evidence adduced in the case before us does not support a finding that the plaintiffs were falsely imprisoned, and accordingly we reverse the judgment of the trial court.

The action for the tort of false imprisonment protects the personal interest in freedom from restraint of movement. The essence of false imprisonment is the intentional, unlawful, and unconsented restraint by one person of the physical liberty of another. *Dupler v. Seubert,* 69 Wis.2d 373, 381, 230 N.W.2d 626 (1975). There is no cause of action unless the confinement is contrary to the will of the "prisoner." It is a contradiction to say that the captor imprisoned the "prisoner" with the "prisoner's" consent. Harper & James, *The Law of Torts* sec. 3.7, p. 227 (1956).

In *Maniaci v. Marquette University,* 50 Wis.2d 287, 295, 184 N.W.2d 168 (1971) and in *Dupler v. Seubert, supra* 69 Wis.2d at 381, we adopted the definition of false imprisonment given by the Restatement of Torts, Second, sec. 35:

"(1) An actor is subject to liability to another for false imprisonment if
"(a) he acts intending to confine the other or a third person within boundaries fixed by the actor, and
"(b) his act directly or indirectly results in such a confinement of the other, and

---

[1] *May v. Skelley Oil Co.,* 83 Wis.2d 30, 35, 264 N.W.2d 574 (1978); *Zweifel v. Milwaukee Auto Mut. Ins. Co.,* 28 Wis.2d 249, 254, 137 N.W.2d 6 (1965); *Maus v. Cook,* 15 Wis.2d 203, 206, 112 N.W.2d 589 (1961); *Rodenkirch v. Johnson,* 9 Wis.2d 245, 248, 101 N.W.2d 83 (1960).

"(c) the other is conscious of the confinement or is harmed by it."

After review of the record we conclude that the evidence is not sufficient to support the conclusion that Wuennenberg's acts "directly or indirectly result[ed] in . . . a confinement of the [plaintiffs]," a required element of the cause of action.

The Restatement lists the ways in which an actor may bring about a "confinement": "by actual or apparent physical barriers" [Sec. 38, Comment *a*] ; "by overpowering physical force, or by submission to physical force" [Sec. 39] ; "by submission to a threat to apply physical force to the other's person immediately upon the other's going or attempting to go beyond the area in which the actor intends to confine him" [Sec. 40] ; "by submission to duress other than threats of physical force, where such duress is sufficient to make the consent give ineffective to bar the action" (as by a threat to inflict harm upon a member of the other's immediate family, or his property) [Sec. 40A] ; "by taking a person into custody under an asserted legal authority" [Sec. 41].

The plaintiffs do not contend that confinement was brought about by an actual or apparent physical barrier, or by overpowering physical force, or by submission to duress, or by taking a person into custody under an asserted legal authority. The parties agree that the central issue is whether there was confinement by threat of physical force and thus argue only as to the applicability of section 40 of the Restatement, which we cited and applied in *Dupler v. Seubert, supra* 69 Wis.2d at 382. Section 40 provides:

"40. Confinement by Threats of Physical Force
"The confinement may be by submission to a threat to apply physical force to the other's person immediately

upon the other's going or attempting to go beyond the area in which the actor intends to confine him."

The comments to section 40 provide that a person has not been confined by "threats of physical force" unless by words or other acts the actor "threatens to apply" *and* "has the apparent intention and ability to apply" force to his person.[2] It is not a sufficient basis for an action for false imprisonment that the "prisoner" remained within the limits set by the actor. Remaining within such limits is not a submission to the threat of

[2] Restatement of Torts, Second, Section 40, Comments:

"*a.* Under the rule stated in sec. 35, the actor's threat may be by words as well as by other acts. It is not necessary that he do any act actually or apparently effectual in carrying a threat into immediate execution. It is enough that he threatens to apply and has the apparent intention and ability to apply force to the other's person immediately upon the other's attempting to escape from the area within which it is the actor's intention to confine him.

". . .

"*b.* The submission must be made to a threat to apply the physical force immediately upon the other's going or attempting to go beyond the area within which the threat is intended to confine him. Submission to the threat to apply physical force at a time appreciably later than that at which the other attempts to go beyond the given area is not confinement.

". . .

"*c. Submission to threats.* The other must submit to the threat by remaining within the limits fixed by the actor in order to avoid or avert force threatened to the other. The other's remaining within such limits is not a submission to the threat unless the other believes that the actor has the ability to carry his threat into effect unless prevented by the other's self-defensive action or otherwise, and that it is, therefore, necessary to remain within these limits in order to escape or avert the violence threatened.

". . .

"*d.* It is not necessary that the force threatened be such that a reasonable man would submit to confinement rather than sustain the harm threatened; it is sufficient that the actor threatens physical force with the intention of confining the other and that the other submits to the threat."

force unless the "prisoner" believed that the actor had the ability to carry his threat into effect.[3]

Dean Prosser comments on the elements of false imprisonment as follows:

*"Character of Defendant's Act*

"The restraint may be by means of physical barriers, or by threats of force which intimate the plaintiff into compliance with orders. It is sufficient that he submits to an apprehension of force reasonably to be understood from the conduct of the defendant, although no force is used or even expressly threatened. The plaintiff is not required to incur the risk of personal violence by resisting until it actually is used. It is essential, however, that the restraint be against the plaintiff's will; and if he agrees of his own free choice to surrender his freedom of motion, as by remaining in a room or accompanying the

---

[3] Other commentators have agreed that submission must be to an apprehension of force and that a voluntary submission to a request does not constitute an imprisonment. For example, Harper and James have stated that:

". . . 'In ordinary practice, words are sufficient to constitute an imprisonment, if they impose a restraint upon the person and the party is accordingly restrained; for he is not obligated to incur the risk of personal violence and insult by resisting until actual violence is used.' . . . *If the plaintiff voluntarily submits there is no confinement, as where one accused of crime voluntarily accompanies his accusers for the purpose of proving his innocence.* And where no force is used, submission must be by reason of an apprehension of force or other unlawful means, *mere moral persuasion not being sufficient."* 1 Harper & James, *Torts* sec. 3.8 (1956). [Emphasis added.]

A student author has noted that:

"If mental pressure is brought to bear on one so that he fears that force will be visited upon him if he does not yield to it, and he does yield to it, he has been directly injured as well as if he had been bodily restrained. . . . *However, the response must be to force, or words or acts which reasonably portend the use of force,* which is immediate, or sufficiently near in point of time to preclude the apparent possibility of escape or avoidance of the force. *A voluntary submission to a request is not an imprisonment."* Note, *Merchants Liability for False Imprisonment,* 17 S.C.L. Rev. 729, 730 (1965). [Emphasis added.]

defendant voluntarily, to clear himself of suspicion or to accommodate the desires of another, rather than yielding to the constraint of a threat, then there is no imprisonment. This gives rise, in borderline cases, to questions of fact, turning upon the details of the testimony, as to what was reasonably to be understood and implied from the defendant's conduct, tone of voice and the like, which seldom can be reflected accurately in an appellate record, and normally are for the jury."[4]

As plaintiffs state in their brief, the question before this court is whether there is any credible evidence which supports a conclusion that the plaintiffs did not consent to the confinement and that they remained in the vestibule only because Wuennenberg indicated by standing in the doorway that she had "the apparent intention and ability to apply" force to their persons should they attempt to leave. We have reviewed the record, and we find that it does not support this conclusion. Ritholz testified that Wuennenberg had not verbally threatened the plaintiffs, and since none of the plaintiffs asked Wuennenberg to step aside, it could be no more than speculation to conclude that Wuennenberg would not only have refused this request but also would have physically resisted had the plaintiffs attempted to leave. At best, the evidence supports an inference that plaintiffs remained in the vestibule because they *assumed* they would have to push Wuennenberg out of the way in order to leave. This assumption is not sufficient to support a claim for false imprisonment.

We do not intend to suggest that false imprisonment will not lie unless a "prisoner" attempts to assault his captor or unless he fails to make such attempt only because he fears harm. The plaintiffs in the case at bar were not required to obtain their freedom by taking

---

[4] Prosser, *Torts* sec. 11, p. 44 (4th ed. 1971).

steps dangerous to themselves or offensive to their reasonable sense of decency or personal dignity. *See* Restatement of Torts, Second, sec. 36. At a minimum, however, plaintiffs should have attempted to ascertain whether there was any basis to their assumption that their freedom of movement had been curtailed. False imprisonment may not be predicated upon a person's unfounded belief that he was restrained. *White v. Levy Brothers*, 306 S.W.2d 829, 830 (Ky. 1957). *Cf. Riggs National Bank v. Price*, 359 A.2d 25 (D.C. App. 1976).

■

*Dupler v. Seubert, supra* 69 Wis.2d at 373, relied on by plaintiffs, does not support plaintiffs' contention that the trial court properly submitted to the jury the question whether the plaintiffs submitted to "an implied threat of actual physical restraint." We concluded in *Dupler* that the record contained sufficient evidence from which a jury could have concluded that plaintiff had been falsely imprisoned "by an implied threat of actual physical restraint":

"[Plaintiff] testified that defendant Peterson ordered her in a loud voice to remain seated several times, after she expressed the desire to leave. She reported being 'berated, screamed and hollered at,' and said the reason she did not just walk out of the room was that 'Mrs. Seubert had blocked the door, and tempers had been raised with all the shouting and screaming, I was just plain scared to make an effort. There were two against one.' " 60 Wis.2d at 383.

As Wuennenberg notes in her brief, the only similarity between *Dupler* and the case at bar is that Wuennenberg stood in the doorway. Plaintiffs were not "berated, screamed, and hollered at"; they outnumbered Wuennenberg three-to-one; and they gave no testimony to the effect that they were frightened of Wuennenberg or that they feared she would harm them.

Viewed in the light most favorable to plaintiffs, the evidence shows that the plaintiffs were willing to identify themselves to the police, but that they would have preferred to leave Wuennenberg's premises. It is not a sufficient basis for an action for false imprisonment that the plaintiffs remained on the premises although they would have preferred not to do so. Because plaintiffs did not submit to an apprehension of force, they were not imprisoned.

*By the Court.*—Judgment reversed, and cause remanded with directions to the trial court to enter judgment in favor of Wuennenberg dismissing plaintiffs' complaint.