Essie FANIEL, Appellant,

v.

CHESAPEAKE AND POTOMAC TELE-
PHONE COMPANY OF MARYLAND
et al., Appellees.

No. 13628.

District of Columbia Court of Appeals.

Argued Dec. 13, 1978.

Decided June 26, 1979.

Gregory E. Kubash, Washington, D. C., for appellant.

Kathryn E. Thiel, Washington, D. C., with whom Robert W. Jeffrey, Washington, D. C., was on brief, for appellees.

Before KERN, GALLAGHER and NE-BEKER, Associate Judges.

GALLAGHER, Associate Judge:

A jury awarded appellant $7,000 on a false imprisonment claim. The trial court granted appellees' motion for judgment notwithstanding the verdict (n. o. v.) and set aside the award.[1] Seeking reinstatement of the verdict in her favor, appellant contends the trial court improperly granted judgment n. o. v. for appellees.[2] We affirm.

Appellant's false imprisonment suit arose out of actions taken by her employer, the American Telephone and Telegraph Company (AT&T) and its subsidiary, the Chesapeake and Potomac Telephone Company of Maryland (C&P) to recover an unauthorized telephone extension in appellant's home. At the time of the alleged false imprisonment, appellant Essie Faniel was employed as a keypunch operator in AT&T's Washington, D.C. office.

On August 20, 1976, a workday for Mrs. Faniel, a supervisor asked her to step into a conference room. There she was introduced to Mr. Aussem,[3] who was identified as an AT&T security supervisor from New York, responsible for investigating misuse of equipment by AT&T employees. Mr.

Aussem informed Mrs. Faniel that routine testing had revealed excessive electronic resistance on her line, suggesting the presence of an unauthorized telephone installation.[4] When asked, Mrs. Faniel told Mr. Aussem she had two phones. Later she admitted having a third, unauthorized telephone, and signed a written statement to that effect. After signing the statement, Mrs. Faniel was told a trip to her home would be necessary to recover the equipment. She did not object, because, as she testified at trial, "I just assumed that I had to go." Appellant testified that her request to call her husband first was denied by Mr. Aussem. However, appellant's supervisor, Mrs. Powell, testified that she placed a call to Mr. Faniel, at appellant's request, from the conference room, and left a message that his wife would be leaving early.[5]

Accompanied by Mr. Aussem and Mrs. Powell, appellant was driven to her home, stopping briefly at a C&P facility in Maryland to pick up a C&P security officer. Mrs. Faniel testified that the stop came as a surprise, although Mr. Aussem testified that he advised her of the need to pick up the C&P security man who had the actual authority to recover the equipment.[6] Dur-

---

1. Alternatively, the trial court gave appellant the option of remitting $4,000 or undergoing a new trial on the amount of damages if the judgment n. o. v. was reversed on appeal. See Super.Ct.Civ.R. 50(b), (c). In view of our disposition of the case, there is no need to determine the proper measure of damages.

2. A directed verdict was granted at the close of appellant's case on her theory of intentional infliction of mental distress. Appellant does not appeal the directed verdict.

3. Mr. Aussem was also named as a defendant.

4. AT&T provides employees with concession (discount) telephone service, and requires the type of service and quantity of telephone equipment to be accurately reflected on company records. Under the AT&T Code of Conduct, it is a violation of company policy to have unauthorized wiring, jacks, telephone sets or other equipment. Violations of the Code, employees are informed, may result in disciplinary action and/or prosecution.
 Pursuant to an arrangement between C&P and AT&T, when routine C&P testing reveals unauthorized use by an AT&T employee, the case is referred to AT&T's security division.

5. In fact, Mr. Faniel was waiting at home when Mrs. Faniel arrived, having received a message from his supervisor that his wife was going home early and would not need a ride.

6. Mrs. Faniel's home is in Maryland, and, therefore serviced by C&P of Maryland. Under the tariffs promulgated by the Maryland Public Service Commission,
 equipment and facilities located on the premises or mobile unit of a customer, authorized user, or Telephone Company agent, are the property of the Telephone Company, *whose employees and agents may enter said premises or mobile unit at any reasonable hour to install, inspect or repair equipment and facilities* to make collections from coin boxes *or upon termination or cancellation of service to remove such equipment and facilities.* [General Regulations Tariffs, P.S.C. Md., No. 201(c)(6) (June 15, 1978); emphasis supplied.]
 See also In the Matter of Regulations Governing Service Supplied by Telephone Companies, Case No. 6828 Before the Public Service Commission of Maryland, Order No. 61496 (Jan. 1, 1976) § 405 (utility may discontinue service without notice for unauthorized or illegal use of service).

ing the brief stop at the C&P building, Mrs. Faniel again asked to call her husband. According to appellant's version of the facts, which we must accept, Mrs. Powell refused permission. On cross-examination, appellant could not recall whether Mrs. Powell had offered to make the call for her, as Mrs. Powell testified.

The foursome proceeded to Mrs. Faniel's home where they were greeted at the door by her husband. The telephone was found unplugged and lying on the floor. After recovering the equipment, the telephone company employees left. Mrs. Faniel received a thirty-day suspension from work, but did not lose her job, and was promoted several months later.

At the close of all the evidence, the trial court reserved a decision on appellees' motion for directed verdict, because it appeared to be a close question as to whether the case should be submitted to the jury. *Seganish v. District of Columbia Safeway Stores, Inc.,* 132 U.S.App.D.C. 117, 406 F.2d 653 (1968). After the jury found for appellant, upon granting appellees' motion for judgment n. o. v. the court stated, "[i]n view of the employee-employer relationship and the fact that the trip to her home was made during working hours, when she was being paid, the detention after the questioning, if any, was not unreasonable. I conclude, therefore, that there was no factual issue to present to the jury for resolution in order to determine whether probable cause existed and the evidence established probable cause for any detention as a matter of law."

## I.

 A judgment n. o. v. provides the means by which a trial court may, after verdict, order the judgment required by law

regardless of the verdict entered. *See generally* 5A Moore's Federal Practice ¶ 50.-07[1] (2d ed. 1977); 9 Wright & Miller, Federal Practice and Procedure: Civil § 2521 (1971). Like a directed verdict, a judgment n. o. v. allows the court to remove from jury consideration those cases in which the facts, viewed most favorably to the nonmoving party, permit but one reasonable conclusion as to the proper judgment.[7] *See, e. g., McKnight v. Wire Properties, Inc.,* D.C.App., 288 A.2d 405, 406 (1972); *District of Columbia v. Jones,* D.C. App., 265 A.2d 594, 595 (1970). Thus, upon review of a judgment n. o. v., "[t]he question for us is not whether there is sufficient evidence in the record to support the findings and decision of the judge, but whether . . . a jury of reasonable men could properly have reached a verdict in favor of appellant, the party upon whom the onus of proof was imposed." *Baker v. D. C. Transit System, Inc.,* D.C.App., 248 A.2d 829, 831 (1969).

 False imprisonment is defined, in this jurisdiction, as the restraint by one person of the physical liberty of another without consent or legal justification. *See, e. g., Tocker v. Great Atlantic & Pacific Tea Company,* D.C.App., 190 A.2d 822, 824 (1963). The essential elements of the tort are (1) the detention or restraint of one against his will, within boundaries fixed by the defendant, and (2) the unlawfulness of the restraint. *See Tocker, supra.* The threshold question in this false imprisonment action is necessarily, whether a detention of appellant occurred.[8]

 As appellant's counsel conceded at trial, any unlawful confinement took place during the automobile trip, not the initial questioning episode. The security officer was entitled to question Mrs. Faniel, an

---

7. *Despite the identity of standards, a denial of a motion for directed verdict is no bar to consideration of a motion for judgment n. o. v. By denying appellees' motion for directed verdict and submitting the case to the jury, the trial court properly reserved for later decision the legal questions presented by the motion. See, e. g., Baker v. D. C. Transit System, Inc.,* D.C. App., 248 A.2d 829, 831 (1969).

8. "The gist of the action for false imprisonment is an unlawful detention. *Clarke v. District of Columbia,* D.C.App., 311 A.2d 508 (1973), *citing Director General of Railroads v. Kastenbaum,* 263 U.S. 25, 44 S.Ct. 52, 68 L.Ed. 146 (1923)." *Riggs National Bank v. Price,* D.C. App., 359 A.2d 25, 27 (1976).

employee, on the employer's premises, about a violation of company policy, without incurring liability for false imprisonment. *Lansburgh's, Inc. v. Ruffin,* D.C. App., 372 A.2d 561 (1977). As this court has stated,

> [o]ne does not lose one's legal rights by virtue of having the status of an employee. On the other hand, up to a point an employer has the right to question employees about their sales practices generally and in a particular case. *Proulx v. Pinkerton's National Detective Agency, Inc.,* 343 Mass. 390, 178 N.E.2d 575 (1961); *Roberts v. Coleman,* 228 Or. 286, 365 P.2d 79 (1961). Taken too far, however, a detention of the employee may result depending upon the circumstances, including the length, nature and manner of interrogation. [*Lansburgh's, supra* at 564.]

Here, Mr. Aussem's brief questioning of Mrs. Faniel was directed toward investigation and explanation of suspicious circumstances,[9] and terminated immediately upon admission of wrongdoing. In *Lansburgh's, supra,* we held that a detention occurred at a late point in the questioning, when the store security employees told the employee that he would be "booked," and proceeded to search him.[10] Under the facts of this case, however, we cannot say that a detention occurred, even during the subsequent trip to appellant's home for further investi-

gation and for recovery of the unauthorized equipment.

 To constitute imprisonment, the restraint of appellant's freedom of movement by appellees must have been total. *See* 1 Restatement (Second) of Torts §§ 35, 36 (1965).[11] Appellant's movements could be restrained, of course, even in a traveling automobile, if she was compelled to go along against her will. *See generally* Prosser, Torts § 11, at 42–44 (4th ed. 1971); Harper & James, The Law of Torts § 3.6 (1956). The driver of a car imprisons an unwilling passenger by restraining the passenger's liberty. *Cheasapeake & Potomac Telephone Co. v. Lewis,* 69 App.D.C. 191, 193 n.2, 99 F.2d 424, 426 n.2 (1938), citing *Cieplinski v. Severn,* 269 Mass. 261, 168 N.E. 722 (1929). Even when the place of confinement is in motion,

> [i]f the actor by force or threats of force, or by exerting legal authority, compels another to accompany him from place to place, he has as effectively confined the other as though he had locked him in a room. [1 Restatement (Second) of Torts § 36, Comment c at 56.]

However, it is not enough for plaintiff to feel "mentally restrained" by the actions of the defendant. *See Riggs National Bank v. Price,* D.C.App., 359 A.2d 25, 27 (1976); *Herbst v. Wuennenberg,* 83 Wis.2d 768, 266 N.W.2d 391, 394–97 (1978).[12] The evidence

9. A telephone company employee testified that excessive electronic resistance could have various causes besides an unauthorized extension, and would not be enough by itself to justify termination of customer service.

10. We have said that an arrest, by definition, "is a restriction of the right of locomotion or a restraint of the person." *Bass v. Dunbar House, Inc.,* D.C.Mun.App., 161 A.2d 50, 51 (1960), *citing Price v. United States,* D.C.Mun. App., 119 A.2d 718, 719 (1956).

11. The Restatement (Second) of Torts lists the ways in which an actor may bring about the confinement required as an element of false imprisonment, in § 38 (by actual or apparent physical barriers), § 39 (overpowering physical force or by submission to physical force), § 40 (submission to threat to apply physical force), § 40A (submission to duress other than threats of physical force, if sufficient to vitiate the consent given, *e. g.,* threat to harm member of

family), and § 41 (taking person into custody under an asserted legal authority).

12. In *Herbst, supra,* 266 N.W.2d at 397, the Wisconsin court cited *Riggs National Bank, supra,* to support its statement that false imprisonment may not be predicated upon an unfounded belief that one is restrained. In *Riggs,* we found no evidence that appellee's fear of being stopped by bank personnel if she attempted to leave the bank was reasonable. Similarly, we stated in *Tocker, supra* at 824:

> While it is true that a person can base an action upon false imprisonment upon a fear of physical intimidation, the record is devoid of any showing that the [store] manager physically detained appellant in any way, nor does it disclose that his conduct was of such character as to cause appellant to reasonably fear he would resort to violence to prevent her departure.

must establish a restraint against the plaintiff's will, as where she yields to force, to the threat of force or to the assertion of authority. *See, e. g., Tocker, supra* at 824. Although plaintiff may submit to a confinement without resistance, if the submission is voluntary, as where an accused voluntarily accompanies his accusers to vindicate himself, then no false imprisonment occurs. *See, e. g., Bass v. Dunbar House, Inc.,* D.C. Mun.App., 161 A.2d 50 (1960).

▌ Submission to the mere verbal direction of another, unaccompanied by force or threats of any character does not constitute false imprisonment. *See Grayson Variety Store, Inc. v. Shaffer,* 402 S.W.2d 424, 425 (Ky.1966). Similarly, fear of losing one's job, although a powerful incentive, does not render involuntary the behavior induced. *See, e. g.,* Prosser, Torts, *supra* § 11, at 106; *Moen v. Las Vegas International Hotel, Inc.,* 90 Nev. 176, 521 P.2d 370, 371 (1974).[13]

▌ Appellant's testimony at trial indicates that she did not accompany the telephone employees because of threats, either of force or prosecution. She did not at any point object or attempt to leave the car. Her testimony is quite revealing:

Q: Okay. Now after you signed the statement that you had an extra phone, it is then that Mr. Aussem said we have to go to your house or something to that effect?
A: Yes.
Q: Okay. Did you voice any objection?
A: No.
Q: Why didn't you?
A: Because I just thought that I had to go.
Q: Did you want to go?
A: No, but with Doris Powell being my supervisor, she was going, and they told me I had to go, so I just assumed that I had to go.

Q: Were they going out to your house whether you went along with them or not?
A: The way he talked, yes.

\*　\*　\*　\*　\*　\*

Q: What did you say to [Mrs. Powell], and what did she say to you?
A: I asked her could I make a call to my husband.
Q: And what did she say?
A: She said no . . .
Q: Why didn't you get out of the car and make a phone call?
A: I was afraid I would lose my job.

\*　\*　\*　\*　\*　\*

Q: And you heard Mr. Aussem testify that you willingly said you would go along with him; is that correct?
A: Yes I heard him say that.
Q: Did you of your own free will go with him?
A: Yes.
Q: Were you afraid that you would be disciplined?
A: Yes.

In borderline cases a jury question may arise as to what was reasonably to be understood and implied from the defendant's conduct. Our search of the record, however, reveals no evidence that appellant yielded to constraint of a threat, express or implied, or to physical force. Absent evidence that appellant accompanied the other employees against her will, we cannot say she was imprisoned or unlawfully detained by appellees. Indeed it cannot be false imprisonment where the "prisoner" voluntarily submits, without proof of duress or force legally sufficient to vitiate the apparent consent. *See, e. g.,* Harper & James, *supra,* § 3.7, at 225; Prosser, *supra,* § 18, at 101. Appellant failed to demonstrate, however, the absence of lawful consent, part of the definition of false imprisonment.

---

**13.** In *Moen,* several dealers at a casino sued for false imprisonment arising out of interrogation by the sheriff's department about a cheating ring. The court, in affirming a summary judgment for defendant, stated "[a]pprehension that one might in the future lose one's job or be prosecuted for theft is not force or the threat of force which is necessary to establish false imprisonment." *Id.* 521 P.2d at 371.

Of course, if the defendant goes beyond the implied consent, and does a substantially different act, he will be liable. See Prosser, *supra* at 104. Whether the assent given was broad enough to cover the invasion inflicted is a question of fact to be determined by the jury in doubtful cases. Harper & James, *supra* at 235. Mrs. Faniel testified that she never consented to the detour to pick up the C&P security officers, and expressed concern during the ride, about the unfamiliar route.[14] Nonetheless, Mrs. Faniel did not object, or manifest a desire to leave the car at that point, so as to negative her prior consent and convert her into an unwilling passenger on the trip to her home to recover the company equipment.[15]

We conclude that the evidence, viewed most favorably to appellant, was insufficient as a matter of law to establish false imprisonment.[16] Therefore, the judgment n. o. v. for appellees was properly granted.

*Affirmed.*

14. Q: All right, did you say anything to Mr. Aussem about the direction that vehicle was driving?
 A: Yes, I asked where we was going because I know we had gone up 16th Street too far to turn to go to my house, and he said that we was going to pick up another man from C&P.
 Q: Now, had you heard that before?
 A: No.
 Q: That was the first time you heard that?
 A: Yes.
 Q: Did you consent to go to the C&P office in Wheaton, Maryland?
 A: No.

15. From all that appears, it was felt advisable that appellant accompany them to her home to minimize any conflict with her privacy or property interests, though we must say the company might well have devised a less laborious and complicated method of accomplishing a mission such as this, as well as an improved communication with the employee concerning the mission.

16. We have no need to reach the issue of probable cause, since the defense is relevant only if the conduct would under ordinary circumstances subject the actor to liability for false imprisonment. In this jurisdiction probable cause becomes material where defendant arrests or detains plaintiff without a warrant or where he claims to be acting in protection of his person or property. Liability will not be imposed in those circumstances if there are reasonable grounds to justify the detention, and the detention is accomplished in a reasonable manner. See, e. g., Neisner Brothers, Inc. v. Ramos, D.C.App., 326 A.2d 239 (1974); Shaw v. May Department Store Co., D.C.App., 268 A.2d 607 (1970); Prieto v. May Department Stores Co., D.C.App., 216 A.2d 577 (1966).