**Elaine RICHARDSON and Heather Antedomenico, Plaintiffs**

v.

**COSTCO WHOLESALE CORPORATION, Defendant.**

No. 3:98CV492(WWE).

United States District Court, D. Connecticut.

Oct. 2, 2001.

**58**

William Thomas Blake, Jr., West Haven, CT, for plaintiffs.

Jonathan B. Orleans, Zeldes, Needle & Cooper, Bridgeport, CT, Edward Cerasia, II, Pröskauer Rose, Newark, NJ, for defendant.

### *RULING ON MOTION FOR SUMMARY JUDGMENT*

EGINTON, Senior District Judge.

This action concerns defendant Costco Wholesale Corporation's employment practice of locking employees in the store during its closing collection procedure. Plaintiffs Elaine Richardson and Heather Antedomenico allege that defendant's lock-in procedure violates the Connecticut General Statutes and the federal Fair Labor Standards Act ["FLSA"], and constitutes false imprisonment. Plaintiff Richardson alleges a claim of constructive discharge.

Defendant has filed a motion for summary judgment.

### *Background*

The parties have submitted briefs, statements of facts pursuant to Local Rule 9(c), and supporting exhibits. These materials reveal the following undisputed facts.

Defendant Costco hired plaintiff Elaine Richardson in September, 1993, at its Waterbury, Connecticut store. She began her career with defendant as a part time cashier and was made a full time cashier in 1994. In 1996, she was transferred to the defendant's warehouse in Brookfield, Connecticut, where she worked as a cashier until her employment terminated in January, 1999.

Richardson received an hourly wage of $12.14 as of May, 1995; $12.67 as of August, 1995; $13.60 as of December, 1995; $14.67 as of March, 1996; and $14.92 as of June 2, 1998.

In 1998, Richardson began having work-related problems. On January 22, 1998, Richardson was asked by a front-end supervisor to sign off on a front-end supervisor checklist. She refused to do so. Richardson was issued a counseling notice for this incident which she refused to sign. On April 29, 1998, Richardson left work without authorization, and received verbal counseling for this violation of Costco policy. On August 22, 1998, Richardson left work 1.2 hours prior to the end of her shift with a line of waiting members at her register. On August 25, 1998, Richardson received a counseling notice and was suspended for three days without pay for this violation of Costco policy.

Plaintiff Heather Antedomenico began her employment with defendant as a seasonal part time employee in September, 1991, working as a membership clerk on a part time basis. In January, 1992, she became a permanent part-time employee. At present, she is employed in this position.

Since February, 1997, Antedomenico has worked 30 hours per week; prior to that time, she worked 20 hours per week. She has not worked more than 40 hours per week since 1994. As of November, 1994,

Antedomenico received an hourly wage of $13.00 per hour; and in March, 1998, Antedomenico's hourly wage increased to $14.00, which remains her current wage.

At the conclusion of an employee's scheduled work shift, the employee leaves her work station, logs out on defendant's computerized time clock, collects any personal belongings in the employee locker area. An employee may then leave the warehouse unless the collection procedure has commenced. If an employee who has already clocked out does not leave the warehouse prior to the collection procedure, that employee remains in the warehouse until the conclusion of that procedure.

The collection procedure begins after the last customer member leaves Costco's Brookfield warehouse, the member's exit door is closed and locked, and the employee exit door is closed and alarmed. Generally, the collection procedure begins within five minutes after the employee exit door is alarmed.

No employee is allowed to leave the warehouse until the collection procedure is completed. Employees who have completed their shifts have been locked inside the warehouse during the collection procedure. At completion of the procedure, a manager disengages the alarm on the employee door so that any employee whose shift has ended can leave the warehouse. A manager then resets the security alarm on the employee door.

During the collection procedure one person takes tills from the cash registers and brings them to the vault. Another person takes the jewelry and brings it to a merchandise pickup room. A total of 36 cash till and money bags are collected during this process. Once in the vault, the manager signs a log showing the time that the cash was placed in the vault.

Plaintiffs assert that the collection procedure has taken up to 40 minutes on nights when they have been locked in the store. Plaintiffs also state that the collection procedure can take as little as ten minutes.

Neither plaintiff has records reflecting when or how often they remained in the warehouse during closing procedures. Antedomenico claims that she has remained in the warehouse during closing procedure once or twice since March, 1998.

Employees may leave the warehouse during closing procedures during an emergency situation. However, employees leaving for reasons other than an emergency could be subject to disciplinary action.

This action was commenced in Connecticut superior court on March 2, 1998, and removed to federal court on March 18, 1998.

### DISCUSSION

A motion for summary judgment will be granted where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Bryant v. Maffucci,* 923 F.2d 979, 982 (2d Cir.), *cert. denied,* 502 U.S. 849, 112 S.Ct. 152, 116 L.Ed.2d 117 (1991).

The burden is on the moving party to demonstrate the absence of any material factual issue genuinely in dispute. *American International Group, Inc. v. London American International Corp.,* 664 F.2d 348, 351 (2d Cir.1981). In determining whether a genuine factual issue exists, the court must resolve all ambiguities and draw all reasonable inferences against the

moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If a nonmoving party has failed to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, then summary judgment is appropriate. *Celotex Corp.,* 477 U.S. at 323, 106 S.Ct. 2548. If the nonmoving party submits evidence which is "merely colorable," legally sufficient opposition to the motion for summary judgment is not met. *Anderson,* 477 U.S. at 249, 106 S.Ct. 2505.

*Counts One and Two*

Plaintiffs' count one alleges that, under the Connecticut General Statutes Section 31–76b(2)(A), plaintiffs are entitled to wages for time spent "on the premises . . . after the warehouse has closed, until all of the cash and jewelry and drawers are collected and verified" and during their off-duty hours, and lunch hours when they have been asked to read administrative and training materials. In count two, plaintiffs allege that Costco employed them for workweeks in excess of 40 hours without overtime compensation, and that Costco failed to pay them a minimum wage, in violation of the FLSA and Connecticut law.

Defendant urges entry of summary judgment on these claims because (1) plaintiffs' claims are barred by the relevant statute of limitations, (2) the time in question is not compensable as "work," (3) plaintiffs cannot support their claims with proof, and (4) the amount of time in question is *de minimus.*

The court notes that defendant's brief attacks the merits of plaintiffs' claim that defendant failed to pay wages for time spent watching videos and reading employee material during lunch hours and breaks. However, plaintiffs' opposition brief addresses only the claims relevant to defendant's lock-in closing procedure. Accordingly, the court deems this portion of plaintiffs' claims to be waived. This ruling addresses the arguments relevant to defendant's lock-in closing procedures.

Defendant argues first that plaintiffs' claims are barred by the applicable two year statute of limitations. 29 U.S.C. § 255; C.G.S. § 52–596; *Butler v. McIntosh,* 1997 WL 112010, at * 5(Conn.Super.1997). Plaintiffs make no attempt to assert that the FLSA's three-year statute of limitations period for claims "arising out of a wilful violation" applies to this case. *See McLaughlin v. Richland Shoe Co.,* 486 U.S. 128, 133, 108 S.Ct. 1677, 100 L.Ed.2d 115 (1988). Accordingly, the Court will dismiss plaintiff's claims based on conduct that occurred prior to March 2, 1996. The court also reviews the merits of plaintiffs' claims since the contested lock-in closing procedure may have resulted in detainment of the plaintiffs after March 2, 1996.

■ Connecticut General Statutes Section 31–76b(2)(A) defines "hours worked" as "all time during which an employee by the employer is required to be on the employer's premises or to be on duty, or to be at the prescribed work place, and all time during which an employee is employed or permitted to work, whether or not required to do so." Thus, the determination of whether plaintiffs' claim is meritorious depends upon whether their time spent during the "lock-up" constitutes work as defined by the Connecticut General Statutes and the FLSA[1].

■ Work for which employees must be compensated under the FLSA means

---

[1]. To interpret the Connecticut wage and hour statutes, Connecticut courts look to authorities relevant to the FLSA. *See Canzolino v.* *United Technologies Corporation,* 1998 WL 851407 at * 3.

"mental or physical exertion (whether burdensome or not) controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer." *Tennessee Coal, Iron & R.R. v. Muscoda,* 321 U.S. 590, 598, 64 S.Ct. 698, 88 L.Ed. 949 (1944). Activities performed by employees either before or after their regular work shifts are compensable under the FLSA, when those activities are an integral and indispensable part of the principal activities which the workers are employed to perform. *Steiner v. Mitchell,* 350 U.S. 247, 253–56, 76 S.Ct. 330, 100 L.Ed. 267 (1956)(changing clothes and showering were compensable post-shift activities where employees at a battery production plant were exposed to dangerous toxic chemical and lead).

In this instance, plaintiffs were not required to remain after their shift primarily for the benefit of defendant. In fact, plaintiffs were free to leave after their shift unless they happened to remain on the premises after commencement of the collection procedure. Accordingly, plaintiffs' presence in the warehouse during the collection procedure is not an indispensable part of the plaintiffs' principal activities.

■ Although the lock-in procedure may have benefitted defendant by ensuring the safety of defendant's merchandise and cash, the time spent by the plaintiffs who remained in the warehouse after their shift was not primarily for defendant's benefit. As defendant pointed out, the lock-in also safeguarded the employees from break-ins during the collection procedure. Furthermore, the fact that an activity gives some benefit to an employer does not automatically compel that the activity is compensable. *Reich v. IBP, Inc.,* 820 F.Supp. 1315, 1324 (D.Kan.1993), *affirmed on this ground,* 38 F.3d 1123 (10th Cir. 1994). The court finds that the time spent

in the warehouse during the collection procedure does not constitute compensable work. The court will enter summary judgment on count one and on count two, which count is contingent on a finding that time spent during the collection procedure constitutes compensable work.

*Count three*

■ In count three, plaintiffs assert that the lock-in procedure constitutes false imprisonment. Defendant argues that plaintiffs cannot prove the prima facie case of false imprisonment.

■ To establish liability for false imprisonment, plaintiffs must prove each of the following elements: (1) their physical liberty was actually restrained; (2) the defendant intended to confine them; (3) they were conscious of the confinement; (4) they did not consent to the confinement; and (5) the confinement was not otherwise privileged. *Berry v. Loiseau,* 223 Conn. 786, 820, 614 A.2d 414 (1992). False imprisonment can only be based upon circumstances that include actual restraint, threat of force or the assertion of legal authority. *See Orgovan v. Eaton Fin. Corp.,* 1996 WL 155388*3 (Conn.Super.1996).

In this instance, plaintiffs cannot prove that they were physically or actually restrained because a safe avenue of escape existed through the employee exit. *See* Restatement (Second) of Torts § 36 (1965). The evidence demonstrates that Richardson and Antedomenico understood that they could exit through the employee door during the closing procedures. The fact that opening the employee exit door would result in an alarm sounding and possible employee discipline does not give rise to an inference that actual confinement or threatening conduct took place. Moral pressure or threat of losing one's job does not constitute a threat of force sufficient to

establish that plaintiffs' were involuntary restrained. *See Faniel v. Chesapeake and Potomac Telephone Company of Maryland,* 404 A.2d 147, 152 (D.C.Ct.App.1979). Testimony that two managers once ran after an employee who exited during closing procedures and informed her that she would be suspended for her conduct does not establish a threat of force.

 Plaintiffs argue that the employee exit was not a reasonable means of egress because it would entail triggering an alarm. A reasonable means of escape does not exist if the circumstances are such as to make it offensive to a reasonable sense of decency or personal dignity. Restatement (Second) of Torts, § 36(2), Comment a. However, the Restatement elaborates that it is unreasonable to refuse to utilize a means of escape because it entails "a slight inconvenience or requires him to commit a technical invasion of another's possessory interest...." For example, as illustrated by the Restatement, it is unreasonable to require an unclothed individual to exit into a room of people, or to require an individual to use an exit that would cause material damage to her clothing. Exiting through an alarmed door in this instance does not rise to the level of offensiveness contemplated by the Restatement. The court will enter summary judgment on count three.

*Count Four*

In count four, plaintiff Richardson claims that she was "constructively discharged" as a result of Costco's alleged retaliation towards her for having complained about her belief that Costco was violating the wage and hour laws. Richardson asserts her constructive discharge claims pursuant to the FLSA, the Connecticut Act and Connecticut common law.

Upon review, the Court find that disputed issues of fact preclude entry of summary judgment on Richardson's claim of constructive discharge pursuant to the FLSA and the Connecticut General Statutes.

However, summary judgment will enter on Richardson's wrongful discharge claim brought pursuant to Connecticut common law. Under Connecticut law, a common law claim for wrongful discharge is available only where the employee is without any other remedy. *Atkins v. Bridgeport Hydraulic Co.,* 5 Conn.App. 643, 648, 501 A.2d 1223 (1985). Because plaintiff has a clear statutory remedy in the FLSA, her common law claim of wrongful discharge cannot be sustained.

*CONCLUSION*

For the foregoing reasons, the defendant's motion for summary judgment [doc. # 46] is GRANTED in part, and DENIED in part. Summary judgment is granted as to all claims except the claim of constructive discharge brought pursuant to the FLSA and the Connecticut General Statutes. Plaintiff is instructed to amend the complaint in accordance with this ruling within 30 days of this ruling's filing date.

SO ORDERED.