**Joan J. OLYNICK, Plaintiff,**

v.

**TAYLOR COUNTY and Alfred Palmer, Defendants.**

No. 85–C–605–S.

United States District Court,
W.D. Wisconsin.

Sept. 23, 1986.

Doyle & Ritz, James E. Doyle, Jr., Madison, Wis., for plaintiff.

Misfeldt, Olson & Stark, Thomas J. Misfeldt, Eau Claire, Wis., for Taylor County.

Wilcox & Wilcox, Eau Claire, Wis., for Alfred Palmer.

## MEMORANDUM AND ORDER

SHABAZ, District Judge.

Before the Court are motions for summary judgment from the plaintiff (addressed only to liability), and from each of the defendants. In this case, brought pursuant to 42 U.S.C. § 1983, plaintiff claims that she was the victim of sexual discrimination and denied due process when she was not allowed to exercise work release privileges during her jail sentence. Jurisdiction is grounded on 28 U.S.C. § 1343. The undisputed facts are as follows:

## FACTS

Plaintiff Joan J. Olynick is a white female resident of Taylor County, Wisconsin. Defendant Taylor County, Wisconsin is a governmental unit of the State of Wisconsin. Defendant Alfred Palmer is the Sheriff of Taylor County.

On May 7, 1984, Olynick was sentenced to 60 days in the Taylor County jail upon her conviction of misdemeanor welfare fraud. She was specifically granted Huber Law privileges under which county jail inmates may be released for work, to seek employment, for self employment (including housekeeping and taking care of the needs of one's family), for school attendance, or for medical treatment. (See Wis. Stat. § 56.08 (1983). She was also prohibited from applying for or receiving food stamps for two years (according to the certificate of sentence). According to the pertinent part of the sentencing hearing transcript,[1] the Taylor County Circuit Court, the Honorable Gary L. Carlson presiding, stated as follows:

The Court: I am satisfied so that the Court sentences the defendant, Joan Olynick, spend sixty days in the Taylor County Jail, Huber privileges. The sentence is to commence within seven days of today's date. She may make the necessary arrangements with her husband and family. The sentence is to commence no later than seven o'clock Monday night, May 14, nineteen hundred and eighty-four, with Huber privileges.

\* \* \* \* \* \*

The Sheriff will be expecting her no later than seven o'clock. She should make arrangements with the Sheriff. Because she is a female, she'll not be able to serve the sentence in the Taylor County. It will have to be outside of the county where they have women. I don't know if Rusk County has that capability.

Mr. Thexton: [District Attorney] No, your Honor. We are looking at Chippewa, Eau Claire, which would be more convenient.

---

1. The plaintiff disputes this excerpt from the transcript insofar as it suggests that the Court knew she would not be serving her sentence in Taylor County. Her counsel at the time asserts that he remembers no such statement. Although the Court does not believe the dispute to be relevant to any of the issues in the case, it notes that the trial judge certified the transcript to be accurate. The transcript was made from the original court reporter's notes by other court reporters assigned the task by the judge. The original reporter was unavailable.

The Court: At this time the Court stands adjourned.

Plaintiff reported as ordered on May 14, 1984 to Sheriff Palmer who advised her that he had not made arrangements with another county as yet. He told her to report the next evening. She did so, and was transferred to the Marathon County Jail at Wausau where she remained for five days. She was then transferred to the Eau Claire County Jail, where she served the remainder of her sentence. In neither facility was plaintiff allowed to exercise her Huber Law privileges.

Sheriff Palmer did not permit women inmates in the Taylor County Jail because there were insufficient women jailers.[2] The jail facility was designed to segregate male and female inmates, but state law required a woman to be on duty whenever there were women inmates housed in a facility. Wis.Stats. § 53.41. It was therefore the policy of the Sheriff and the County to transfer women inmates to other counties. Palmer transferred Olynick pursuant to such policy. However, he knew that neither Marathon nor Eau Claire Counties would permit Olynick to exercise her Huber Law privileges outside of those respective counties. He understood that Olynick wished to work on the family farm. He made inquiries to three other counties before transferring Olynick, but was unable to place her elsewhere. When Olynick's trial counsel objected to the transfer, Palmer consulted with Judge Carlson, District Attorney Thexton, and Ralph DiSalvo, a State of Wisconsin jail inspector, and understood from what each of these persons told him that he had the authority to transfer Olynick. Sheriff Palmer had requested the County Board to fund sufficient women jailers in both 1981 and 1983 to allow the jail to house female inmates.

In 1983, the Board authorized four positions but funded only two.

When Olynick arrived at Eau Claire, she requested that she be allowed to exercise her Huber Law privileges, but she was denied. According to Greg Lieberg, an Eau Claire County Deputy Sheriff in charge of Huber prisoners at the County Jail, the County had a policy of honoring Huber Law privileges of inmates transferred from other counties only insofar as they were to exercise such privileges within a reasonable distance from the jail. Olynick's farm was some 60 miles from Eau Claire. At no time were Olynick's Huber Law privileges withdrawn by any court, nor did she receive any hearing on their withdrawal, nor did she violate any disciplinary regulations which would justify withdrawal of such privileges.

## MEMORANDUM

There are a number of well settled legal principles relevant to this case. A prisoner has no constitutional right to serve a sentence in a particular jail. *Meachum v. Fano*, 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976) is certainly broad enough to justify such a holding. Had plaintiff been allowed to exercise Huber Law privileges from the Eau Claire County Jail, she would have had nothing of which to complain (certainly an important consideration with respect to damages stemming from plaintiff's incarceration there).

Nor is there any indication in any case cited by any party that a county has a constitutional obligation to house female inmates. It is certainly rational for small counties which are seldom called upon to house female inmates to cooperate among themselves to handle such responsibilities in the most efficient manner.[3] Clearly,

**2.** Plaintiff has submitted contradictory findings of fact on this issue at ¶ 4, Plaintiff's Proposed Findings of Fact, at ¶ 7, Response to Defendant Taylor County's Proposed Findings of Fact, and at ¶ 3 of a supplementary set of Plaintiff's Proposed Findings of Fact (Docket # 54). Palmer's deposition, which is cited as the basis for all of these findings, discloses that two women were hired as jailers on May 1, 1984, but neither had

undergone the necessary training to allow them to be jailers. It must be conceded that defendants transferred women because there were insufficient women jailers to allow the housing of female inmates.

**3.** There is evidence in the record that Taylor County was required to send female inmates to other counties fewer than 20 times over a three

state law encourages the counties to do just that. Under such circumstances the uneven treatment of classes of prisoners with respect to conditions of confinement does not rise to constitutional significance. *See Personnel Administrator of Massachusetts v. Feeney,* 442 U.S. 256, 272, 99 S.Ct. 2282, 2292, 60 L.Ed.2d 870 (1979).

■ Thus, there was nothing unlawful under either the Due Process or Equal Protection Clauses of the Fourteenth Amendment in transferring plaintiff, for reasons of administration and economy, to another county to serve her sentence. Even if the transfer of plaintiff in this case was outside of the contours of the State's cooperation statute (Wis.Stat. § 53.44, which apparently contemplates formal agreements), there is nothing about this fact to implicate the Constitution. Since the statute contains no substantive predicates to transfer the requirement of a formal agreement is merely a state procedural matter. *Shango v. Jurich,* 681 F.2d 1091 (7th Cir.1982). However, plaintiff's complaint implicates something more substantial.

■ Plaintiff's Huber Law privileges, entitling her to release for up to 12 hours per day to work on the family farm and tend her family, were not just conditions of confinement. They were significant conditions of her sentence. As was stated in *Montayne v. Haymes,* 427 U.S. 236, 243, 96 S.Ct. 2543, 2547, 49 L.Ed.2d 466 (1976), changes in conditions of confinement (even those with a substantial impact) are not alone enough to invoke Due Process protections "as long as the conditions or degree of confinement to which the prisoner is subjected is within the sentence imposed upon him." This proviso is directly implicated here. Not only is the denial of Hu-

ber Law privileges outside of the sentence imposed, as in *Vitek v. Jones,* 445 U.S. 480, 100 S.Ct. 1254, 63 L.Ed.2d 552 (1980) (transfer to a mental hospital), it is directly contrary to it. The Court notes that while the sentencing court can withdraw the privilege "with or without notice" (Wis.Stat. § 56.08(2)), no one else has such authority. A sheriff may suspend such privileges for five days only for violation of jail regulations. Wis.Stat. § 56.08(1). Neither the Court nor the Sheriff withdrew, revoked or suspended plaintiff's privileges under the statutes.

The conclusion is thus inescapable that because of the denial of her right to exercise Huber Law privileges, plaintiff was denied liberty without Due Process. She certainly did not have a right to serve her sentence in Taylor County, even without reference to the sentencing judge's comments at her hearing. But there is nothing conditional about the privileges disclosed in either the sentencing hearing or Certificate of Sentencing.[4]

On the surface it would appear that the denial of such privileges violated the Equal Protection Clause as well. It is evident that male prisoners sentenced with Huber Law privileges in Taylor County were given the opportunity to exercise such privileges. Female prisoners were not. However, as this is just an alternative theory of recovery for plaintiff's damages, the Court need not face this issue.

■ Defendants are entitled to summary judgment on plaintiff's false imprisonment claim based on state law. Although plaintiff has cited cases from other jurisdictions which appear to allow such a claim when the conditions of confinement are more restrictive than a lawful imprisonment, Wisconsin has never done so. The Wisconsin

---

year period. This fact was not established for purposes of these motions, but it is certainly safe to assume that in a county of some 18,000 persons female jail inmates are a relative rarity.

**4.** Defendant Taylor County in a lately filed "Supplemental Brief" asserts that Judge Carlson, in his deposition, stated that he "probably informed her that … her actual receipt of those

privileges would be contingent upon the approval of the sheriff of the county in which she would have to be housed." That may be his recollection, or may have been his intention, but the transcript certified by him to be correct flatly contradicts such a recollection and evidences no such intention (assuming mere intention were relevant, which it is not.)

Supreme Court has adopted the formulation of the tort of false imprisonment found in Restatement of Torts, Second, § 35. *Herbst v. Wuennenberg,* 83 Wis.2d 768, 266 N.W.2d 391 (1978). In a literal sense, as noted in the Court's decision on defendant's dismissal motion, the defendants' actions appear to conform to the elements of the tort: there was an intentional confinement, and the actions had the indirect result of confinement which harmed the plaintiff. An important factor missing from the record at the dismissal stage was the fact that, while plaintiff was denied the opportunity to exercise her Huber Law privileges in accordance with her expectations at sentencing (essential to the Due Process claim) she was not entirely without the right to work release at Eau Claire. She just could not exercise the privilege outside of Eau Claire County. The Court views this fact as one which extinguishes the unlawfulness of the confinement for purposes of a false imprisonment claim, although the same fact is not relevant to the Due Process claim.

Finally, defendant Palmer moves for summary judgment on the ground of qualified good faith immunity. According to *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), a public official is entitled to good faith immunity unless his actions violated the clearly established constitutional rights of the plaintiff. It is, therefore, not relevant that Palmer attempted to obtain female jailers for some time before this occurrence, since this would go to his subjective good faith and *Harlow* is an objective standard. Objectively, it is clear that there was (or is) no constitutional right not to be transferred from one county jail to another. Nor does plaintiff point to any persuasive local authority for the proposition that work release privileges under the Huber Law were liberty interests sufficient to defeat the Sheriff's right to transfer women inmates. This is clear even though this Court has no trouble concluding that such privileges are protected liberty interests. Finally, although it does not compel a conclusion one way or another, the Sheriff consulted the District Attorney, the sentencing judge and a state-employed jail consultant as to whether he could transfer plaintiff. Despite the clarity with which this Court sees the issue, the fact that none of these other persons understood the conclusion to be so obvious compels a conclusion that the right violated was not "clearly established" within the meaning of *Harlow.*

Accordingly, defendant Palmer is entitled to qualified immunity and his motion for summary judgment will be granted.

## ORDER

IT IS ORDERED that plaintiff's motion for summary judgment is GRANTED to the extent that her loss of work release privileges violated the Due Process Clause of the Fourteenth Amendment, and is otherwise DENIED.

IT IS FURTHER ORDERED that defendant Palmer's motion for summary judgment is GRANTED to the extent the motion was based on qualified immunity.

IT IS FURTHER ORDERED that defendant Taylor County's motion for summary judgment is GRANTED with respect to plaintiff's false imprisonment claim and is otherwise DENIED.