**COMMONWEALTH OF PENNSYLVA-NIA, DEPARTMENT OF ENVIRON-MENTAL RESOURCES, Appellant,**

v.

**UNITED STATES POSTAL SERVICE, Appellee.**

No. 93–7073.

United States Court of Appeals, Third Circuit.

Argued Sept. 28, 1993.

Decided Dec. 21, 1993.

Carl B. Schultz (argued), David Wersan, Office of Chief Counsel, Pennsylvania Dept. of Environmental Resources, Harrisburg, PA, for Com. of Pa., Dept. of Environmental Resources.

Peter R. Steenland, Jr., Acting Asst. Atty. Gen., Wayne P. Samuelson, U.S. Atty., John Copeland Nagle (argued), Michael A. McCord, Attys., U.S. Dept. of Justice, Environment & Natural Resources Div., Environmental Defense Section, Washington, DC, for U.S. Postal Service.

Before: SCIRICA, ALITO and SEITZ, Circuit Judges.

## OPINION OF THE COURT

ALITO, Circuit Judge:

The Commonwealth of Pennsylvania, Department of Environmental Resources ("DER") appeals from a district court order granting judgment on the pleadings in favor of the United States Postal Service on the DER's claim for civil penalties based on violations of state environmental requirements, 810 F.Supp. 605. The district court held that the Postal Service retained sovereign immu-

nity with respect to these penalties. We hold that the district court's reasoning is inconsistent with governing Supreme Court precedent, and we therefore reverse the district court's order and remand for further proceedings.

### I.

In 1991, the DER filed a complaint with the Pennsylvania Environmental Hearing Board seeking civil penalties from the Postal Service for violations of the Pennsylvania Clean Streams Law, 35 Pa.Stat.Ann. § 691.1 *et seq.* (1993), and the "earth disturbance permit" that the DER had issued to the Postal Service in connection with the construction of a post office facility near Harrisburg, Pennsylvania. The Postal Service removed the case to the United States District Court for the Middle District of Pennsylvania and filed an answer asserting the affirmative defense of sovereign immunity. The Postal Service subsequently moved for judgment on the pleadings, and the district court granted that motion based on sovereign immunity.

In analyzing the question of sovereign immunity, the district court began by examining the Supreme Court's decisions in *Franchise Tax Board v. United States Postal Service*, 467 U.S. 512, 104 S.Ct. 2549, 81 L.Ed.2d 446 (1984), and *Loeffler v. Frank*, 486 U.S. 549, 108 S.Ct. 1965, 100 L.Ed.2d 549 (1988). These decisions, the district court noted, broadly construe the "sue-and-be-sued" provision of the Postal Reorganization Act of 1970 ("PRA"), 39 U.S.C. § 401(1) (1988),[1] to mean that the Postal Service is "amenable to all civil incidents of suit." Dist. Ct.Op. at 7. Under these decisions, the district court stated, exceptions to this waiver may be recognized

only if (1) subjecting the Service to the penalty is inconsistent with the Constitution, the Clean Water Act or the Postal Act; (2) an implied restriction on the waiver is necessary to avoid "grave interference[ ] with a governmental function"; or (3) for other reasons it was plainly Congress' intent not to allow a state regulatory

---

1. This provision states in pertinent part: "The Postal Service shall have the following general

powers: (1) to sue and be sued in its official name...."

agency to collect civil penalties from a federal instrumentality such as the Postal Service.

*Id.* at 7–8 (citations omitted).

The court then discussed the second of these exceptions—avoiding "grave interference" with a governmental function—and concluded that this exception did not apply here. Stating that "the only function which remains exclusive to the Postal Service is the delivery of what is defined as 'letter mail,' " the court observed that "[t]here is nothing to indicate that the imposition of civil penalties will interfere in any manner whatsoever with that function, much less a suggestion that it would pose a 'grave interference.' " *Id.* at 8. The court also observed that such penalties would "not have any impact on the public treasury" since the Postal Service receives no tax dollars. *Id.*

The district court then turned to the question whether subjecting the Postal Service to civil penalties for state environmental violations would be inconsistent with the PRA or the Clean Water Act ("CWA"), 33 U.S.C. §§ 1251–1387 (1988). The court found that such penalties would not conflict with the PRA but would conflict with the federal facilities provision of the CWA, 33 U.S.C. § 1323. The court noted that this provision generally waives the sovereign immunity of federal departments, agencies, and instrumentalities with respect to the enforcement of federal and state environmental laws and that this provision applies to the Postal Service, since it is an "independent establishment of the executive branch." 39 U.S.C. § 201 (1988). The court also noted, however, that the Supreme Court has held that the waiver contained in the federal facilities provision of the CWA does not apply to state-imposed penalties for past environmental violations. *United States Dep't of Energy v. Ohio,* —— U.S. ——, 112 S.Ct. 1627, 118 L.Ed.2d 255 (1992). Because the waiver in the federal facilities provision of the CWA is more specific than that in the PRA and was enacted several years later, the court reasoned that the waiver in the CWA prevailed. The court thus

held that "[t]he Clean Water Act, by necessary implication, limits the sue-and-be-sued waiver of sovereign immunity of the Postal Act" and that the Postal Service is therefore "immune from civil penalties for past violations" of state environmental requirements. Dist.Ct.Op. at 16–17. The DER then appealed.[2]

On appeal, the DER argues that the "sue-and-be-sued" clause in the PRA broadly waived the Postal Service's sovereign immunity and that none of the three exceptions noted in *Franchise Tax Board* and *Loeffler* applies. The DER then contends that the district court's reliance on the narrower waiver subsequently enacted as part of the CWA is inconsistent with the Supreme Court's reasoning in *Loeffler.* According to the DER, *"Loeffler* ... rejected the argument—adopted by the district court below—that a later adopted subject-specific statute operates to restrict the broad waiver effected by the PRA." Appellant's Br. at 22.

The Postal Service, although urging us to affirm the decision of the district court, concentrates heavily on arguments quite different from those adopted by that court. While the district court based its decision on the federal facilities provision of the CWA, the Postal Service argues that it is not necessary for us to rely on the CWA at all. The Postal Service contends that the "sue-and-be-sued" provision of the PRA does not waive its immunity from state regulation and does not apply to civil penalties because they do not constitute one of the "natural and appropriate incidents of legal proceedings." *Loeffler,* 486 U.S. at 555, 108 S.Ct. at 1969. Furthermore, the Postal Service argues that *Missouri Pacific Railroad v. Ault,* 256 U.S. 554, 41 S.Ct. 593, 65 L.Ed. 1087 (1921), stands for the proposition that "a federal instrumentality that is generally subject to suit nonetheless retains its immunity from suit to collect a penalty authorized by state law." Appellee's Br. at 22.

While strenuously advancing these arguments, the Postal Service devotes little more than a page of its brief to a discussion of the

---

**2.** We have jurisdiction under 28 U.S.C. § 1291. The district court had jurisdiction under 39

U.S.C. § 409(a).

district court's reasoning. *See id.* at 30–31. More significantly, in response to the DER's argument that this reasoning is inconsistent with *Loeffler,* the Postal Service states that the DER's argument is wrong because it incorrectly assumes that the "sue-and-be-sued" clause waived sovereign immunity from civil penalties in the first place. *Id.* at 31 n. 14. Accordingly, the Postal Service seems to rest its argument almost entirely, if not exclusively, on the proposition that the "sue-and-be-sued" provision of the PRA does not waive sovereign immunity from civil penalties.

## II.

A. We will first address the question whether the "sue-and-be-sued" provision in the PRA waives the Postal Service's sovereign immunity from civil penalties for environmental violations.

As a result of the PRA, the Postal Service has a hybrid status. Although the Postal Service is "an independent establishment of the executive branch" (39 U.S.C. § 201), and retains certain governmental attributes, the PRA "launched [the Postal Service] into the commercial world." *Franchise Tax Bd.,* 467 U.S. at 520, 104 S.Ct. at 2554. As part of its "general design that the Postal Service 'be run more like a business than its predecessor, the Post Office Department'" (*Loeffler,* 486 U.S. at 556, 108 S.Ct. at 1969 (quoting *Franchise Tax Bd.,* 467 U.S. at 520, 104 S.Ct. at 2554)), Congress authorized the Postal Service "to sue and be sued." 39 U.S.C. § 401(1). The Supreme Court has held that this clause "must be liberally construed and that the Postal Service's liability must be presumed to be the same as that of any other business." *Loeffler,* 486 U.S. at 556, 108 S.Ct. at 1969. Moreover, "[e]ncompassed within this liberal-construction rule is the principle 'that the words "sue-and-be-sued" normally include the natural and appropriate incidents of legal proceedings.'" *Id.* at 555, 108 S.Ct. at 1969 (quoting *Reconstruction Fin. Corp. v. J.G. Menihan Corp.,* 312 U.S. 81, 85, 61 S.Ct. 485, 487, 85 L.Ed. 595 (1941)). Implied exceptions to this waiver "cannot be lightly assumed." *Id.* 486 U.S. at 554, 108 S.Ct. at 1968 (quoting *Federal Hous. Admin.*

*v. Burr,* 309 U.S. 242, 245, 60 S.Ct. 488, 490, 84 L.Ed. 724 (1940)). "Rather if the general authority to 'sue and be sued' is to be delimited by implied exceptions, it must be clearly shown that certain types of suits are not consistent with the statutory or constitutional scheme, that an implied restriction of the general authority is necessary to avoid grave interference with the performance of the governmental function, or that for other reasons it was plainly the purpose of Congress to use the 'sue-and-be-sued' clause in a narrow sense." *Burr,* 309 U.S. at 245, 60 S.Ct. at 490; *see also Loeffler,* 486 U.S. at 554, 108 S.Ct. at 1968; *Franchise Tax Bd.,* 467 U.S. at 517–18, 104 S.Ct. at 2552–53.

B. Despite the breadth of the waiver provided by the "sue-and-be-sued" clause of the PRA, the Postal Service maintains that this waiver does not apply to civil penalties. The Postal Service first argues that this clause does not waive its immunity from state regulation. The Postal Service argues that if the "sue-and-be-sued" clause were interpreted as constituting such a waiver, "then state and local authorities could extensively regulate and tax federal postal facilities." Appellee's Br. at 21.

We do not believe that it is necessary for us to consider this question here. Even if the "sue-and-be-sued" clause of the PRA does not waive the Postal Service's immunity from state environmental regulation, the federal facilities provision of the CWA indisputably does so. *See* 33 U.S.C. § 1323 (1988). Thus, the question before us is not whether the "sue-and-be-sued" clause waives the Postal Service's immunity from state regulation, but whether it waives the Postal Service's immunity from one of the consequences (i.e., civil penalties) of noncompliance with state requirements to which Congress has unequivocally subjected it.

■ C. The Postal Service next argues that the "sue-and-be-sued" clause does not apply to civil penalties because such penalties are not one of "the natural and appropriate incidents of legal proceedings." *Loeffler,* 486 U.S. at 555, 108 S.Ct. at 1969 (quoting *J.G. Menihan Corp.,* 312 U.S. at 85, 61 S.Ct. at 487). The Postal Service does not, however, cite any authority that supports this proposi-

tion. Nor does the Postal Service explain why civil penalties cannot be considered one of "the natural and appropriate incidents of legal proceedings." Federal and state statutes authorizing civil penalties are common. To be sure, civil penalties are not a "natural and appropriate" incident of a legal proceeding unless the law applicable to that proceeding authorizes such penalties, but much the same may be said of prejudgment interest, which has been held to be a "natural and appropriate" incident of a legal proceeding. *Id.* Prejudgment interest is still not available on all claims. *See, e.g., Poleto v. Consolidated Rail Corp.*, 826 F.2d 1270, 1273–79 (3d Cir.1987) (no prejudgment interest on FELA claims). Thus, prejudgment interest, like civil penalties, is a "natural and appropriate" incident of suit only when the applicable law so provides.

█ D. Finally, the Postal Service argues, as previously noted, that *Missouri Pacific Railroad Co. v. Ault, supra,* stands for the broad proposition that "a federal instrumentality that is generally subject to suit nonetheless retains its immunity from suit to collect a penalty authorized by state law." Appellee's Br. at 22. Contrary to the Postal Service's argument, however, we believe that *Ault* concerned the sovereign immunity of the government itself, not the sovereign immunity of a federal instrumentality that has been "launched ... into the commercial world." *Franchise Tax Bd.*, 467 U.S. at 520, 104 S.Ct. at 2554.

*Ault* resulted from the federal government's operation of the railroads during World War I. In 1916, Congress authorized the President to take control of the railroads in time of war, and by proclamation in December 1917 President Wilson did so, naming the Secretary of the Treasury, William G. McAdoo, as the Director General of Railroads. 40 Stat. 451. *See Northern Pac.*

*R.R. v. North Dakota*, 250 U.S. 135, 142–43, 39 S.Ct. 502, 503, 63 L.Ed. 897 (1919). At the time of the events at issue in *Ault*, the government was operating the railroads under the Federal Control Act of 1918, ch. 25, 40 Stat. 451. Section 10 of this Act provided that carriers under federal control would generally remain subject to all of the laws and suits that would otherwise apply to them.[3] *Ault* involved an attempt to enforce a state statute that required a railroad to pay an employee his full wages within seven days after discharge and imposed a civil penalty for failing to do so. *See* 256 U.S. at 555, 41 S.Ct. at 593. When a railroad under federal control violated this provision, a state court imposed the prescribed civil penalty upon the railroad and the Director General. *Id.* at 556, 41 S.Ct. at 594.

Reviewing this decision, the Supreme Court first held that under the applicable provisions of federal law the railroad itself could not be sued for any claim arising out of its operation by the government. 256 U.S. at 557–62, 41 S.Ct. at 594–96. Instead, the court held that the suit had to be brought against the Director General. *Id.* at 561–62, 41 S.Ct. at 596. The court then turned to the question whether the Director General could be held liable, apparently in his official capacity, for the civil penalty. Referring to provisions of the Federal Control Act, the court wrote:

> By these provisions, the *United States* submitted *itself* to the various laws, state and federal, which prescribe how the duty of a common carrier by railroad should be performed and what should be the remedy for failure to perform. By these laws the validity and extent of claims *against the United States* arising out of the operation of the railroad were to be determined. But there is nothing either in the purpose

---

3. This provision stated in pertinent part:

> That carriers while under Federal control shall be subject to all laws and liabilities as common carriers, whether arising under State or Federal laws or at common law, *except in so far as may be inconsistent with the provisions of this Act or any other act applicable to such Federal control or with any order of the President. Actions at law or suits in equity may be brought by and against such carriers*

> and judgments rendered as now provided by law; and in any action at law or suit in equity against the carrier, no defense shall be made thereto upon the ground that the carrier is an instrumentality or agency of the Federal Government.... But no process, mesne or final, shall be levied against any property under such Federal control.

*Quoted in Ault*, 256 U.S. at 558, 41 S.Ct. at 595.

or letter of these clauses to indicate that Congress intended to authorize suit *against the Government* for a penalty, if it should fail to perform the legal obligations imposed. The *Government* undertook as carrier to observe all existing laws; it undertook to compensate any person injured through a departure by its agents or servants from their duty under such law; but it did not undertake to *punish itself* for any departure by the imposition *upon itself* of fines and penalties or to permit any other sovereignty to punish it. Congress is not to be assumed to have adopted the method of fines *paid out of public funds* to ensure obedience to the law on the part of the Government's railway employees.

*Id.* at 563–64, 41 S.Ct. at 597 (emphasis added).

As the highlighted references in the passage quoted above make clear, and as subsequent Supreme Court opinions confirmed, *Ault* held that the relevant provisions of the Federal Control Act did not waive *the government's* immunity from civil penalties. *See, e.g., Davis v. L.L. Cohen & Co.,* 268 U.S. 638, 640, 45 S.Ct. 633, 634, 69 L.Ed. 1129 (1925); *Davis v. Donovan,* 265 U.S. 257, 263, 44 S.Ct. 513, 514, 68 L.Ed. 1008 (1924); *E.I. DuPont de Nemours & Co. v. Davis,* 264 U.S. 456, 462, 44 S.Ct. 364, 366, 68 L.Ed. 788 (1924); *Director Gen. v. Kastenbaum,* 263 U.S. 25, 28, 44 S.Ct. 52, 53, 68 L.Ed. 146 (1923); *Dahn v. Davis,* 258 U.S. 421, 428, 42 S.Ct. 320, 321, 66 L.Ed. 696 (1922).[4] This holding is entirely consistent with recent Supreme Court decisions concerning such waivers. As the Supreme Court stated in *United States Department of Energy v. Ohio,* —— U.S. at ——, 112 S.Ct. at 1633, 118 L.Ed.2d 255 "any waiver of the National Government's sovereign immunity must be unequivocal." *See also, e.g., United States v. Nordic Village, Inc.,* —— U.S. ——, —— – ——, 112 S.Ct. 1011, 1014–15, 117 L.Ed.2d 181 (1992); *Ardestani v. Immigration & Naturalization Serv.,* —— U.S. ——, ——, 112 S.Ct. 515, 520, 116 L.Ed.2d 496 (1991). Thus, since the

relevant provision of the Federal Control Act did not unequivocally refer to civil penalties, the government's immunity from such penalties was not waived. *See United States Dep't of Energy v. Ohio,* —— U.S. ——, 112 S.Ct. 1627, 118 L.Ed.2d 255. *Ault* did not concern the waiver of the sovereign immunity of an entity such as the Postal Service, which has been launched into the commercial world, and thus we do not believe that *Ault* is dispositive in the present case.

E. In our view, the question whether the Postal Service is immune from civil penalties for violating state laws to which it is subject must be decided within the framework set out in *Franchise Tax Board* and *Loeffler.* Accordingly, we believe that the Postal Service is not immune unless it can be

> "clearly shown that certain types of suits are not consistent with the statutory or constitutional scheme, that an implied restriction of the general authority is necessary to avoid grave interference with the performance of a governmental function, or that for other reasons it was plainly the purpose of Congress to use the 'sue-and-be-sued' clause in a narrow sense."

*Loeffler,* 486 U.S. at 554, 108 S.Ct. at 1968.

The Postal Service, however, has not explained why we should hold that any of these exceptions applies here. In a footnote, the Postal Service states that it "disagree[s] with DER's assertion that none of the exceptions are satisfied in this case." Appellee's Br. at 19 n. 7. "In particular," the Postal Service states, "the imposition of civil penalties on the USPS for state environmental law violations is inconsistent with the PRA and interferes with the ability of the USPS to perform its statutory mandate." *Id.* But the Postal Service provides no further elaboration. Since the district court has already rejected the Postal Service's arguments concerning these exceptions, and since the DER briefed them extensively in its opening brief, we deem the Postal Service's treatment of these arguments in its brief to constitute a waiver

---

4. As the Court stated in *E.I. DuPont de Nemours & Co. v. Davis,* citing *Ault* and related cases: "In taking over and operating the railroad systems of the country the United States did so in its sovereign capacity, as a war measure, 'under a right

in the nature of eminent domain,' ...; and it may not be held to have waived any sovereign right or privilege unless plainly so provided." 264 U.S. at 462, 44 S.Ct. at 366.

of these arguments for the purposes of the current case.

## III.

■ We now turn to the reasoning adopted by the district court in holding that the Postal Service is immune from the civil penalties at issue in this case. As we have noted, the district court concluded that the more specific and more recently enacted waiver provision, the federal facilities provision of the CWA, 33 U.S.C. § 1323, should prevail over the more general and older waiver provision, the "sue-and-be-sued" clause of the PRA, 39 U.S.C. § 401(1). We agree with the DER, however, that this reasoning is not consistent with the Supreme Court's decision in *Loeffler*.

*Loeffler* presented the question whether the Postal Service was immune from prejudgment interest on claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* (1988). When the PRA was enacted in 1970, Title VII did not apply to any federal entity. *See Loeffler*, 486 U.S. at 558, 108 S.Ct. at 1971. In 1972, Congress amended Title VII by adding Section 717, 42 U.S.C. § 2000e–16 (1988), which made Title VII applicable to all federal employees, including employees of the Postal Service. This amendment also authorized an aggrieved employee to file a civil action in federal court, and this authorization was interpreted as a waiver of the government's sovereign immunity from suit but not as a waiver of the government's sovereign immunity from interest. *Library of Congress v. Shaw*, 478 U.S. 310, 106 S.Ct. 2957, 92 L.Ed.2d 250 (1986).

Confronted with the question whether the Postal Service was likewise immune from prejudgment interest on Title VII awards despite the "sue-and-be-sued" provision in the PRA, a majority of the Eighth Circuit, sitting en banc, held that it was. *Loeffler v. Tisch*, 806 F.2d 817 (8th Cir.1986). The majority reasoned that "a sue-and-be-sued clause does not expand the obligations of a federal entity in a suit brought pursuant to another statute that is itself a waiver of immunity and which constitutes an exclusive remedy." *Id.* at 819.

The Supreme Court, however, over the dissent of three justices,[5] rejected this reasoning. The Court wrote:

> First, this is an argument for an implied exception to the waiver of sovereign immunity effected by a sue-and-be-sued clause. Yet [the Postmaster General] offers no reason for concluding that Congress intended his implied exception to be added to those that this court articulated in *FHA v. Burr*, 309 U.S. at 245, 60 S.Ct. at 490, and we see no reason why we should do so.
>
> Second, when Congress intends the waiver of sovereign immunity in a new cause of action directed against federal entities to be exclusive,—in effect, to limit the force of "sue-and-be-sued" clauses—it has said so expressly.... [N]either the language of § 717 of Title VII nor its legislative history contains an expression that the waiver of sovereign immunity it effected was intended also to narrow the waiver of sovereign immunity of entities subject to sue-and-be-sued clauses.

*Loeffler*, 486 U.S. at 561–62, 108 S.Ct. at 1972–73.

This reasoning seems to be dispositive here. Both *Loeffler* and the current case involve the "sue-and-be-sued" provision of the PRA and subsequently enacted provisions that (a) waive sovereign immunity from suit on certain claims (Title VII claims in *Loeffler*, CWA and state environmental claims in this case), but (b) do not waive immunity from certain forms of relief (prejudgment interest in *Loeffler*, civil penalties here). Thus, the two cases appear to us to be parallel for present purposes. Moreover, here, as in *Loeffler*, neither the language of the subsequently enacted provision nor its legislative history "contains an expression that the waiver of sovereign immunity it effected was intended also to narrow the waiver of sovereign immunity of entities subject to sue-and-be-sued clauses." *Loeffler*, 486 U.S. at 562, 108 S.Ct. at 1973. Consequently, we believe that the Supreme Court's

---

5. These three justices dissented "[e]ssentially for the reasons stated by the en banc Court of Appeals." 486 U.S. at 566, 108 S.Ct. at 1975 (White, J., dissenting).

decision in *Loeffler* dictates rejection of the district court's reasoning in the case before us.

### IV.

In summary, we hold that the "sue-and-be-sued" provision in the PRA waives the Postal Service's immunity from civil penalties unless one of the exceptions set out in *Franchise Tax Board* and *Loeffler* applies. We deem the Postal Service to have conceded, for purposes of this case, that no such exception applies. We also hold that the more limited waiver of sovereign immunity contained in the federal facilities provision of the Clean Water Act does not narrow the waiver in the PRA. We therefore reverse the order of the district court and remand for further proceedings.