[Nos. F049458, F049715. Fifth Dist. Aug. 2, 2007.]

KIMBERLY McGEE, Plaintiff and Respondent, v.
TUCOEMAS FEDERAL CREDIT UNION et al., Defendants and
Appellants.

**COUNSEL**

Horvitz & Levy, Peter Abrahams, Robert H. Wright; Borton, Petrini & Conron, J. David Petrie and Sean T. O'Rourke for Defendants and Appellants.

Richardson & Harman, Paul F. Schimley and Richard C. Moore for California Credit Union League as Amicus Curiae on behalf of Defendants and Appellants.

Pine & Pine, Norman Pine, Beverly Tillett Pine; Penner, Bradley & Buettner, Peter Sean Bradley; Wagner & Jones and Andrew B. Jones for Plaintiff and Respondent.

**OPINION**

**LEVY, Acting P. J.**—The primary issue presented in this appeal is whether a federally chartered credit union is subject to punitive damages. Appellants, Tucoemas Federal Credit Union (Credit Union) and Linda Reese, the Credit Union's chief executive officer, contend the punitive damages awarded in favor of respondent, Kimberly McGee, on her employment discrimination

claims must be reversed on the ground of sovereign immunity. According to appellants, the Credit Union, as a federal instrumentality, cannot be held liable for punitive damages absent an express waiver of its immunity from those claims. Appellants further argue that, in any event, the trial court should have reduced the punitive damage award when it reduced the compensatory damage award.

As discussed below, in the absence of certain narrow exceptions, federal "instrumentalities" that are subject to a "sue and be sued" clause are presumed to have fully waived immunity. These exceptions were not established by appellants. Accordingly, the trial court correctly concluded that appellants were not immune from the punitive damage award. Further, despite the reduction in compensatory damages, there remains a reasonable relationship between the compensatory and the punitive damages. Therefore, the judgment will be affirmed.

## BACKGROUND

McGee was employed by the Credit Union as the vice-president of lending. In May 2003 McGee was diagnosed with breast cancer. McGee took a leave of absence for surgery and chemotherapy. Due to her relatively young age, 43, McGee's oncologist, Dr. Hsu, prescribed an aggressive course of chemotherapy.

Appellants required McGee to return to work within four months, by September 15. McGee was told that if she needed any more time beyond that to recuperate, she would be fired.

McGee's last chemotherapy treatment was scheduled for September 8. Because the treatments made McGee tired and nauseous, she requested an accommodation to permit working part of the time at home. From past experience, McGee knew that with the use of her computer, fax machine, and telephone, most of her job duties could be accomplished from her home for a short period of time. However, appellants refused this request outright and told McGee that if she did not return to work within one week, i.e., by September 15, she would be demoted to branch manager at an 11 percent pay decrease.

When McGee explained to Dr. Hsu that she would be fired if she did not return to work, he prepared a full release for her. McGee reported to work on September 15. Even though McGee complied with appellants' demand, she was demoted to a branch manager position. At trial, Reese admitted that this action was taken because McGee asked for a temporary accommodation.

Due to the demotion, McGee had reduced work hours. Based on the reduced hours, appellants cancelled McGee's medical insurance and cut her salary in half. McGee was extremely upset about the loss of medical coverage. The anticipated cost of her upcoming radiation treatments alone was over $60,000.

The branch manager position involved greater physical demands on McGee. Further, Reese engaged in a pattern of behavior that McGee found humiliating. McGee ceased her employment with the Credit Union due to stress.

McGee filed the underlying complaint alleging causes of action under the Fair Employment and Housing Act for retaliation, failure to engage in good faith interactive process, failure to provide a reasonable accommodation, and disability discrimination. The jury ruled in favor of McGee and awarded $2,041,558 in compensatory damages, with a setoff of $51,173, for a total of $1,990,385. The jury further found that the Credit Union and Reese engaged in the conduct with malice, oppression or fraud and awarded punitive damages of $1.2 million against the Credit Union and $7,000 against Reese.

Appellants filed various posttrial motions including for a new trial due to excessive damages. The trial court conditionally granted this new trial motion unless McGee accepted a reduction of the compensatory damages by $750,000. McGee accepted the reduction. The trial court refused to remit any portion of the punitive damages.

## DISCUSSION

1. *The Credit Union is not immune from punitive damages.*

 The United States government is immune from civil penalties absent an express and unequivocal waiver of that immunity. (*Missouri Pac. R. R. Co. v. Ault* (1921) 256 U.S. 554, 563–564 [65 L.Ed. 1087, 41 S.Ct. 593].) However, the government does not become the conduit of its immunity in suits against its agents or instrumentalities merely because they do its work. (*Keifer & Keifer v. R. F. C.* (1939) 306 U.S. 381, 388 [83 L.Ed. 784, 59 S.Ct. 516].)

Congress has waived the sovereign immunity of certain federal government agencies and instrumentalities from the time of their inception by including a "sue and be sued" clause in the enabling legislation. (*Loeffler v. Frank* (1988) 486 U.S. 549, 554 [100 L.Ed.2d 549, 108 S.Ct. 1965].) Unlike waivers given by the federal government itself, such a "sue and be sued" waiver is to be

given "a liberal—that is to say, expansive—construction" (*Postal Service v. Flamingo Industries (USA) Ltd.* (2004) 540 U.S. 736, 741 [158 L.Ed.2d 19, 124 S.Ct. 1321]), "notwithstanding the general rule that waivers of sovereign immunity are to be read narrowly in favor of the sovereign." (*FDIC v. Meyer* (1994) 510 U.S. 471, 480 [127 L.Ed.2d 308, 114 S.Ct. 996].)

Encompassed within this liberal construction rule is the principle that "sue and be sued" includes the natural and appropriate incidents of legal proceedings. (*Loeffler v. Frank, supra,* 486 U.S. at p. 555.) It must be presumed that when Congress launches a governmental agency or instrumentality into the commercial world and endows it with authority to " 'sue or be sued,' " that entity is not less amenable to judicial process than a private enterprise under like circumstances would be. (*F. H. A. v. Burr* (1940) 309 U.S. 242, 245 [84 L.Ed. 724, 60 S.Ct. 488].) Accordingly, federal entities have been found not to be immune from prejudgment interest (*Loeffler v. Frank, supra,* 486 U.S. at p. 565), garnishment (*F. H. A. v. Burr, supra,* 309 U.S. at p. 247), orders to withhold delinquent state taxes (*Franchise Tax Board of California v. USPS* (1984) 467 U.S. 512, 525 [81 L.Ed.2d 446, 104 S.Ct. 2549]), and civil penalties based on violations of state environmental requirements (*Com. of Pa. Dept. of Env. Res. v. U.S. Postal Serv.* (3d Cir. 1993) 13 F.3d 62, 69).

With three exceptions, "sue and be sued" clauses cannot be limited by implication. (*FDIC v. Meyer, supra,* 510 U.S. at p. 480.) A federal agency or instrumentality is not immune unless it can clearly show that (1) certain types of suits are not consistent with the statutory or constitutional scheme; (2) an implied restriction of the general authority is necessary to avoid grave interference with the performance of a governmental function; or (3) for other reasons it was plainly the purpose of Congress to use the "sue and be sued" clause in a narrow sense. (*Ibid.*) Absent such a showing, federal agencies or instrumentalities authorized to " ' "sue and be sued" ' " are presumed to have *fully waived immunity.* (*Id.* at p. 481.)

Unlike certain other federal entities, such as production credit associations, federal credit unions have not been legislatively declared to be federal "instrumentalities." Nevertheless, while not federal agencies, federal credit unions have been judicially found to be, as a general matter, federal instrumentalities, i.e., lesser in scope and in responsibility than actual government agencies. (*TI Federal Credit Union v. DelBonis* (1st Cir. 1995) 72 F.3d 921, 935.)

For purposes of this opinion, we will assume that the Credit Union is a federal instrumentality.[1] However, contrary to appellants' position, this federal instrumentality status does not in and of itself provide the Credit Union with immunity from punitive damages. An entity is not entitled to the same immunities as the United States simply by virtue of its federal instrumentality status. (*Arkansas v. Farm Credit Servs. of Central Ark.* (1997) 520 U.S. 821, 832 [138 L.Ed.2d 34, 117 S.Ct. 1776].) Rather, as a federal entity that Congress has decreed can sue or be sued (12 U.S.C. § 1757(2)), a federal credit union is presumed to have fully waived immunity unless it can explain why it is immune under the three-part test set forth above. (Cf. *FDIC v. Meyer, supra*, 510 U.S. at pp. 480–481.)

In asserting their immunity, appellants rely on a line of cases that began with the production credit association decision of *Matter of Sparkman* (9th Cir. 1983) 703 F.2d 1097. There, a two-judge majority held that, as a legislatively declared instrumentality of the United States, a production credit association was not subject to liability for punitive damages absent an express waiver of such immunity. The *Sparkman* majority concluded that, "while the 'sue and be sued' clause in the enabling legislation for production credit associations waives sovereign immunity from ordinary lawsuits, it does not subject production credit associations to liability for punitive damages." (*Id.* at p. 1101.) However, one judge disagreed concluding that, in light of the Supreme Court's pronouncement that the "sue and be sued" waiver is to be liberally construed, no limitation of this waiver to actual damages should be implied. (*Id.* at p. 1102 (conc. & dis. opn. of Frye, J.).)

Several cases have followed *Matter of Sparkman*, including one California appellate decision. (*Smith v. Russellville Production Credit Ass'n* (11th Cir. 1985) 777 F.2d 1544; *Rohweder v. Aberdeen Production Credit Ass'n* (8th Cir. 1985) 765 F.2d 109; *Commerce Federal Sav. Bank v. FDIC* (6th Cir. 1989) 872 F.2d 1240; *Woodland Production Credit Assn. v. Nicholas* (1988) 201 Cal.App.3d 123 [251 Cal.Rptr. 791].) However, the continued validity of *Sparkman* is questionable.

First, when *Matter of Sparkman*, was decided in 1983, the government managed production credit associations. The role of the Farm Credit Administration was as a supervisor, not an arm's length regulator. Production credit associations were not privately owned, organized and operated. The government had a proprietary interest. (*In re Hoag Ranches* (9th Cir. 1988) 846 F.2d

---

[1] McGee argues that the Credit Union has not adequately proved its status as a federal credit union at the times material to this case. However, McGee has judicially admitted that the Credit Union is a federal credit union by alleging so in her complaint. Since we are assuming that the Credit Union is a federal instrumentality, appellants' request for judicial notice of the Credit Union's organization certificate is denied as irrelevant. The remaining requests for judicial notice are granted.

1225, 1229.) In contrast, although the structure of a federal credit union and the duties of its various corporate parts are highly regulated by federal statute, a federal credit union is member owned and operated, i.e., privately owned, not government owned. (*Cuenca v. Safeway San Francisco Employees Fed. Credit Union* (1986) 180 Cal.App.3d 985, 995 [225 Cal.Rptr. 852]; 12 U.S.C. §§ 1752(1), 1757.) Accordingly, the relevance of *Matter of Sparkman* to federal credit unions is extremely limited.

More importantly, however, the *Sparkman* analysis is inconsistent with subsequent United States Supreme Court authority. In *Sparkman*, the Ninth Circuit concluded that a federal instrumentality subject to a " 'sue and be sued' " clause retains its immunity from punitive damages unless Congress *explicitly* authorizes liability for such damages. (*Matter of Sparkman, supra*, 703 F.2d at p. 1101.) However, the Supreme Court set forth a contrary analytical framework in *FDIC v. Meyer, supra*, 510 U.S. 471. There, the court explained that "sue and be sued" clauses cannot be limited by implication unless there has been a clear showing of one of three narrow exceptions. "Absent such a showing, agencies 'authorized to "sue and be sued" are presumed to have *fully waived immunity.*' " (*Id.* at p. 481, italics added.) Consequently, in accordance with Supreme Court authority, we must start from the premise that the Credit Union waived immunity from punitive damages.

Noting that "sue and be sued" has been defined by the Supreme Court as including a waiver of the natural and appropriate incidents of legal proceedings (*Loeffler v. Frank, supra*, 486 U.S. at p. 555), appellants argue it should not apply to punitive damages because such damages are not an ordinary incident of suit. Rather, punitive damages are extraordinary and are meant to punish the defendant, not compensate the plaintiff. However, although not commonly imposed, punitive damages are authorized by statute as an incident of suit, i.e., they are natural and appropriate in certain cases. (Civ. Code, § 3294.) Further, liability for punitive damages is consistent with the presumption that the liability of a government instrumentality launched into the commercial world is the same as that of any other business. (Cf. *Franchise Tax Board of California v. USPS, supra*, 467 U.S. at p. 520.) Therefore, as with other incidents of suit, immunity from punitive damages is presumed to be waived by a "sue and be sued" clause.

Nevertheless, as outlined above, there are three exceptions to this waiver presumption. The Credit Union will be found to be immune from punitive damages if it can be " 'clearly shown' " (1) that punitive damages " 'are not

consistent with the statutory or constitutional scheme' "; (2) that an implied restriction of punitive damages " 'is necessary to avoid grave interference with the performance of a governmental function' "; or (3) " 'that for other reasons it was plainly the purpose of Congress to use the "sue and be sued" clause in a narrow sense.' " (*Loeffler v. Frank, supra,* 486 U.S. at p. 554.)

Appellants contend that two of these exceptions apply. Appellants first argue that a punitive damage claim is inconsistent with "the statutory scheme generally exempting the federal government and its instrumentalities from punitive damages." In support of this position, appellants rely on the presumption against imposing punitive damages on taxpayers through government entities (*Vermont Agency of Natural Resources v. United States ex rel. Stevens* (2000) 529 U.S. 765, 785 [146 L.Ed.2d 836, 120 S.Ct. 1858]), and on the government's statutory exemption from liability for punitive damages under both title VII (42 U.S.C. § 1981a(b)(1)) and the Federal Tort Claims Act (28 U.S.C. § 2674).

Regardless, federal credit unions are not the government. Rather, they are privately owned cooperative associations. Federal credit unions are not supported by taxpayer dollars. Thus, the punitive damages would not unduly burden taxpayers and be " ' "borne by widows, orphans, aged men and women, and strangers . . . ." ' " (*Vermont Agency of Natural Resources v. United States ex rel. Stevens, supra,* 529 U.S. at p. 785, fn. 15.) Further, neither title VII nor the Federal Tort Claims Act is relevant here. This case is based on state employment discrimination claims. Moreover, it is questionable whether a federal credit union would even be considered a federal agency for purposes of the Federal Tort Claims Act. (Cf. *Lewis v. United States* (9th Cir. 1982) 680 F.2d 1239 [while federal instrumentalities for some purposes, the independent, privately owned and locally controlled federal reserve banks are not federal agencies under the Federal Tort Claims Act].) Thus, appellants have not clearly shown that punitive damages are inconsistent with the statutory scheme.

Appellants further contend that subjecting federal credit unions to punitive damages would gravely interfere with the performance of a government function, that of meeting the credit and savings needs of consumers, especially persons of modest means. According to appellants, punitive damage awards would drain the financial resources of federal credit unions and interfere with their ability to extend low cost loans to their members.

However, there is no evidence to support appellants' argument. Rather, it is based on speculation alone. As noted by the trial court, the Credit Union has

a functional net worth of $16 million and its management receives significant bonuses. Thus, while the $1.2 million punitive damage award might decrease member equity and possible member dividends, there is no evidence that it would affect the Credit Union's ability to meet the credit needs of consumers.

■ Further, punitive damage awards have judicial limits and will be reversed if excessive. The nature of the defendant's acts, the amount of compensatory damages awarded and the wealth of the defendant must all be considered. (*Devlin v. Kearny Mesa AMC/Jeep/Renault, Inc.* (1984) 155 Cal.App.3d 381, 389 [202 Cal.Rptr. 204].) The poorer the wrongdoing defendant, the smaller the punitive damages award will be. (*Id.* at p. 390.) Accordingly, a punitive damage award does not inevitably lead to financial ruin.

■ In sum, when analyzed within the framework set forth by the United States Supreme Court, it must be concluded that the "sue and be sued" clause in the federal credit union enabling legislation presumptively waives immunity from punitive damages. Since appellants have failed to clearly show the applicability of an exception to this waiver presumption, sovereign immunity does not apply.

2. *The reduction in compensatory damages did not require a corresponding reduction in punitive damages.*

As noted above, the trial court remitted the approximately $2 million compensatory damages award by $750,000 but refused to remit the $1.2 million punitive damages award. Appellants contend the trial court erred in that the compensatory damages reduction required a corresponding punitive damages reduction.

■ In assessing a punitive damage award, the appellate court considers the nature of the defendant's acts, the amount of compensatory damages awarded, and the wealth of the defendant. (*Neal v. Farmers Ins. Exchange* (1978) 21 Cal.3d 910, 928 [148 Cal.Rptr. 389, 582 P.2d 980].) While punitive damages must bear a reasonable relation to actual damages, no fixed ratio exists to determine the proper proportion. (*Liodas v. Sahadi* (1977) 19 Cal.3d 278, 284 [137 Cal.Rptr. 635, 562 P.2d 316].) Rather, calculating punitive damages involves a fluid process of adding or subtracting depending on the circumstances. (*Devlin v. Kearny Mesa AMC/Jeep/Renault, Inc., supra*, 155 Cal.App.3d at p. 390.)

Within this framework, juries have wide discretion to determine what punitive damage award is proper. (*Devlin v. Kearny Mesa AMC/Jeep/Renault, Inc., supra,* 155 Cal.App.3d at p. 390.) There is no simple formula for calculating punitive damages in that there is no particular sum that represents the *only* correct amount for such damages in any given case. Instead, there is a wide range of reasonableness for punitive damages reflective of the fact finder's human response to the evidence presented. (*Id.* at p. 391.) On appeal, high ratios of punitive damages to compensatory damages, as much as 2,000 to 1, have been affirmed. (*Id.* at p. 390.)

Based on these principles, a reduction in compensatory damages does not mandate a corresponding reduction in punitive damages. There is no requirement that the original ratio between compensatory and punitive damages as measured by the jury remain. (*Betts v. Allstate Ins. Co.* (1984) 154 Cal.App.3d 688, 712 [201 Cal.Rptr. 528].) Rather, the court must evaluate the case based on the factors set forth above, i.e., the nature of the defendant's acts, the amount of compensatory damages and the defendant's wealth. While all three factors must be satisfied, "the 'most important question is whether the amount of the punitive damages award will have deterrent effect—without being excessive.' " (*Las Palmas Associates v. Las Palmas Center Associates* (1991) 235 Cal.App.3d 1220, 1255 [1 Cal.Rptr.2d 301].)

Applying the above considerations to this case, it cannot be concluded that the punitive damages were excessive as a matter of law. Appellants' conduct was reprehensible. Following McGee's cancer surgery, appellants engaged in a pattern of behavior aimed at humiliating McGee and forcing her to quit. Appellants refused to provide McGee with medical accommodation, threatened to fire her if she did not return after four months and, when McGee did timely return, appellants demoted her, cut her pay in half and cancelled her medical coverage. Moreover, the award as reduced bears a reasonable relation to the actual damages, approximately 1 to 1. Further, there is no evidence that the award will constitute an undue burden on the Credit Union or precipitate financial ruin.

By issuing the one remittitur but not the other, the court made an implied finding that the punitive award was correct. (*Betts v. Allstate Ins. Co., supra,* 154 Cal.App.3d at p. 712.) Deference to the trial court is appropriate in this case. (Cf. *Devlin v. Kearny Mesa AMC/Jeep/Renault, Inc., supra,* 155 Cal.App.3d at p. 392.)

## DISPOSITION

The judgments are affirmed. Costs on appeal are awarded to respondent.

Cornell, J., and Dawson, J., concurred.

A petition for a rehearing was denied September 4, 2007, and appellants' petition for review by the Supreme Court was denied November 14, 2007, S156198.